## ZDROJEWSKI v MURPHY

Docket Nos. 224274, 226399. Submitted September 5, 2002, at Detroit.
Decided November 15, 2002, at 9:00 A.M. Leave to appeal sought.

Irene Zdrojewski brought an action in the Oakland Circuit Court
against John W. Murphy, M.D., and William Beaumont Hospital,
alleging medical malpractice relating to, among other things, the
severance of her recurrent laryngeal nerve and a perforation of her
esophagus during surgery by Murphy at Beaumont to treat cancer
in the plaintiff's thyroid. A jury returned a verdict and award of
damages for the plaintiff. The court, Rudy J. Nichols, J., reduced
the award of noneconomic damages to conform the award to the
limitations set by MCL 600.1483. The defendants appealed, and the
plaintiff cross appealed.

The Court of Appeals *held*:

1. The trial court did not abuse its discretion in granting the
plaintiff's motion to amend her complaint during trial to add a
claim of res ipsa loquitor. The trial court correctly granted the
motion pursuant to MCR 2.118(C)(1), which provides that when
issues not raised by the pleadings are tried by express or implied
consent of the parties, they are treated as if they had been raised
by the pleadings, and that amendment of the pleadings to conform
to the evidence and to raise those issues may be made on motion
of a party at any time, even after judgment. The trial court cor-
rectly ruled that the defendants' failure to object to the admission
of res ipsa loquitor evidence implied their consent to litigate the
issue.

2. The trial court did not err in denying the defendants' motion
for a directed verdict on the plaintiff's claim that Murphy was negli-
gent for failing to timely dictate his operative report. The defen-
dants failed to cite authority holding that the rules of an external
agency such as the Joint Commission on Accreditation of Health-
care Organizations, including rules governing when operative
reports are to be completed, cannot be used to establish the defen-
dants' duty to the plaintiff. Although the trial court erred in denying
the motion for a directed verdict in the absence of a showing by
the plaintiff that she was harmed by the delay in the dictation of
the operative report, allowing the verdict to stand would not be

inconsistent with substantial justice because there was sufficient evidence from which the jury could reasonably conclude that the defendants were negligent on the basis of the plaintiff's alternate theories regarding the severed recurrent laryngeal nerve or the perforated esophagus.

3. The trial court did not err in denying Beaumont's motion for summary disposition of the plaintiff's claim of vicarious liability by the hospital for the negligence of Murphy, another physician, and a physician's assistant. There were genuine issues of material fact regarding whether the other physician and the physician's assistant were ostensible agents of Beaumont and whether one of them caused the plaintiff's injury. Even though a finding of ostensible agency with respect to Murphy should have been precluded by the existence of a relationship between the plaintiff and Murphy that predated the plaintiff's admission to Beaumont, the defendants, by failing to object to a jury instruction that Murphy should be deemed an agent of Beaumont, have effectively waived their claim of error regarding the trial court's denial of Beaumont's motion for summary disposition.

4. The trial court did not err in refusing to reduce the jury's award of economic damages by the difference between the amounts paid by the plaintiff's health insurers and the amounts they asserted in their liens against the judgment. The difference did not constitute a collateral source benefit under MCL 600.6303, subsection 4 of which provides that collateral source does not include benefits paid or payable by a person or legal entity entitled by contract to a lien against the proceeds of a recovery by a plaintiff in a civil action for damages, if the contractual lien has been exercised.

5. The trial court did not abuse its discretion in granting the plaintiff's request for supplemental mediation sanctions for attorney fees incurred during posttrial proceedings. The trial court's determination that $150 an hour was an appropriate rate was not unreasonable on its face, given the duration of the posttrial proceedings and the fact that the plaintiff's counsel was an experienced trial attorney. The trial court's decision to award 77.3 hours was not excessive when considering the number of posttrial motions requiring extensive briefing and hearings, and the fact that the plaintiff originally sought more than 135 hours. Although the hourly rate was much lower than the rate sought by the plaintiff, it was not so low as to be completely outside the range of hourly rates typically charged by attorneys with the level of experience of plaintiff's counsel.

6. MCL 600.1483, which imposes limits on damages for noneconomic loss recoverable by a medical malpractice plaintiff,

does not infringe the right to a trial by jury guaranteed by Const 1963, art 1, § 14. The Legislature has the authority to abolish common-law tort claims, including the ability to limit remedies for such claims. MCL 600.1483 does not impinge on a jury's right to decide cases because the damages cap in no way removes from the jury the determination of the facts and of the amount of damages incurred. The statute only limits the legal consequences of the jury's finding.

7. MCL 600.1483 does not violate equal protection, as guaranteed by US Const, Am XIV and Const 1963, art 1, § 2. The statute satisfies the rational basis test inasmuch as it is rationally related to the legitimate governmental purpose of controlling health care costs through the reduction of medical malpractice insurance premiums.

8. MCL 600.6403, which governs tort actions seeking damages for personal injury or property damage involving fault of more than one person, and MCL 600.1483 do not violate the separation of powers doctrine, Const 1963, art 3, § 2, as intruding on the rulemaking power of the judicial branch of state government. The statutes are grounded on policy considerations other than regulating the procedural operations of the judiciary and thus do not impermissibly infringe the Supreme Court's rulemaking authority.

Affirmed.

FITZGERALD, J., dissenting, stated that MCL 600.1483 violates the right to a jury trial as guaranteed by Const 1963, art 1, § 14. The right to trial by jury extends to the determination of damages, and the Legislature is not free to abrogate the right by requiring the arbitrary reduction of damages awarded by the jury without any determination regarding whether the award was supported by the evidence at trial. The trial court's ruling that MCL 600.1483 is constitutional should be reversed.

NEGLIGENCE — MEDICAL MALPRACTICE — NONECONOMIC DAMAGES — RIGHT TO JURY TRIAL — EQUAL PROTECTION — SEPARATION OF POWERS.

Statutory limitations on the amount of noneconomic damages recoverable by medical malpractice plaintiffs do not violate constitutional rights to a jury trial and equal protection, nor do they intrude on the Michigan Supreme Court's constitutional authority to make rules regarding procedure so as to violate the separation of powers doctrine (US Const, Am XIV; Const 1963, art 1, §§ 2, 14, art 3, § 2; MCL 600.1483).

*Granzotto & Nicita, P.C.* (by *Mark Granzotto*), and *Weiner and Cox, P.L.C.* (by *Melissa B. Gross*), for the plaintiff.

*O'Connor, DeGrazia & Tamm, P.C.* (by *Julie McCann O'Connor*), for the defendants.

Before: FITZGERALD, P.J., and BANDSTRA and GAGE, JJ.

BANDSTRA, J. Defendants appeal as of right from a judgment for plaintiff in this medical malpractice case. Plaintiff cross appeals the trial court's decision to reduce the damages awarded by the jury pursuant to MCL 600.1483. We affirm.

### I. BASIC FACTS AND PROCEEDINGS BELOW

In April 1995, Dr. Donald Meyer referred plaintiff to defendant John M. Murphy, M.D., for treatment of a cancerous thyroid tumor. Dr. Murphy, who was the chief of surgery at defendant William Beaumont Hospital, performed the surgery at a Beaumont facility on June 12, 1995. Another physician, Dr. Bruce MacIntosh, and a physician's assistant, Frank Mercandonte, assisted Dr. Murphy in performing the surgery. According to Dr. Murphy, plaintiff's thyroid was "cement-like" and adherent to other structures because of past radioactive iodine treatment, which made the surgery more difficult. In addition, Dr. Murphy concluded that plaintiff's recurrent laryngeal nerve needed to be removed because it was encased by the tumor.

The day after the surgery, Dr. Murphy noted that plaintiff had an elevated temperature and drainage from the incision, and he ordered an esophagoscopy, which revealed a perforation in plaintiff's esophagus. Plaintiff was taken directly to surgery and a thoracic surgeon, Dr. Robert Welsch, repaired the perforation.

Plaintiff recovered from this second surgery and was released from Beaumont on June 20, 1995.

Following the surgery at Beaumont, plaintiff had difficulty breathing, swallowing, and eating. In July 1995, plaintiff was admitted to another hospital because she was suffering from aspiration pneumonia. According to plaintiff, no one informed her or her family that her recurrent laryngeal nerve was removed during the operation. Dr. Murphy completed a handwritten operative note following the surgery, but did not dictate his operative report until June 21, 1995, the day after plaintiff was discharged from Beaumont. The operative report stated that the recurrent laryngeal nerve was removed; however, the handwritten note contained no reference to the nerve removal, and the pathology report showed no indication that the nerve was involved in the tumor. In her complaint filed in March 1997, plaintiff alleged that Dr. Murphy and Beaumont or its "agents, servants and/or employees, either real or ostensible" were negligent.

In May 1998, Beaumont moved for partial summary disposition, arguing that it could not be liable for any alleged negligence of Dr. Murphy because he was not an agent of Beaumont. Beaumont claimed that plaintiff's treating physician referred her to Dr. Murphy, there was a preexisting relationship between Dr. Murphy and plaintiff before the June 1995 surgery, and it did not take any action that would lead plaintiff to reasonably believe that Dr. Murphy was acting on its behalf. The trial court noted that plaintiff asserted that she relied on Beaumont for treatment because of the recommendation of her brother. The court further noted that plaintiff's injuries might have occurred

because of the negligence of Dr. McIntosh, who plaintiff did not seek out for treatment. The trial court denied Beaumont's motion, stating that it could not find as a matter of law that there was no ostensible agency relationship between Beaumont and Dr. Murphy or that Dr. Murphy's actions were the sole cause of plaintiff's injuries.

Before trial began in this case, plaintiff submitted proposed jury instructions that included a request for SJI2d 30.05, which is the standard jury instruction regarding res ipsa loquitur, to which defendants objected.[1]

At trial, plaintiff presented three theories of negligence: that defendants allowed plaintiff's esophagus to be perforated during surgery, that defendants failed to preserve plaintiff's recurrent laryngeal nerve, and that Dr. Murphy failed to timely dictate his operative report. Plaintiff's and defendants' experts agreed that an esophageal perforation is a rare complication in a thyroidectomy. Plaintiff's expert, Dr. Levey, testified that an esophageal perforation does not happen in the absence of negligence, and defendants did not object to this testimony. Dr. Levey further opined that the perforation was caused either by Dr. Murphy or by one of the other members of the surgical team.

---

[1] SJI2d 30.05 states:

> If you find that the defendant had control over the [*body of the plaintiff/instrumentality which caused the plaintiff's injury*], and that the plaintiff's injury is of a kind which does not ordinarily occur without someone's negligence, then you may infer that the defendant was negligent.
>
> However, you should weigh all of the evidence in this case in determining whether the defendant was negligent and whether that negligence was a proximate cause of plaintiff's injury. [Emphasis in original.]

Defendants' expert testified that the perforation likely occurred because plaintiff's thyroid and esophagus were scarred and weakened by previous radioactive iodine treatment, and traction during the surgery pulled on this weakened tissue, causing it to tear.

Plaintiff produced evidence demonstrating that Dr. Murphy's claim that the nerve was encased by cancer was noted on the operative report, but was not included on the handwritten operative note, on the pathology report, or on the discharge summary. Regarding the delay in dictation of the operative report, Dr. Levey testified that the delay violated the standard of care because the "Joint Commission of Hospitals Association"[2] requires operative reports to be completed within twenty-four hours after surgery. Dr. Levey further opined that an operative report dictated nine days after surgery is not likely to be accurate, and suggests "lackadaisicalness" and "sloppiness." When asked whether the delay in compiling the report resulted in any harm to plaintiff, Dr. Levey admitted that plaintiff was not directly harmed by the delay.

At the conclusion of her proofs, plaintiff moved to amend the pleadings to add a claim of res ipsa loquitur. Plaintiff argued that, under MCR 2.118(C)(1), issues tried by express or implied consent of the parties are treated as if they had been raised by the pleadings and amendment should be allowed to conform to the evidence. Plaintiff noted Dr. Levey's testi-

---

[2] It appears that plaintiff's expert was referring to the Joint Commission on Accreditation of Healthcare Organizations (JCAHO). JCAHO is an independent, not-for-profit organization that sets standards for and accredits health care organizations. A hospital's participation in JCAHO is voluntary. It was undisputed that defendant Beaumont participated in JCAHO.

mony that an esophageal perforation does not ordinarily occur in the absence of negligence. Defendants denied that they consented to litigating res ipsa loquitur, claiming that it came up for the first time during Dr. Levey's testimony and that defense counsel objected to it.[3] Plaintiff contended that the theory was raised during discovery and that the broad language in the complaint put defendants on notice of the possibility of this theory. The trial court agreed with plaintiff's reasoning and granted her request to amend.

Defendants moved for a directed verdict on plaintiff's theory of negligence regarding the delayed dictation of the operative report, arguing that the delay did not violate the standard of practice and did not harm plaintiff. Plaintiff argued, and the court agreed, that defendants failed to object to Dr. Levey's testimony or move to have it stricken. The court also noted that defense counsel did not question Dr. Levey regarding his foundation for testifying that a delay in dictating a report was a violation of the standard of care. Defendants argued that, as a matter of law, failure to timely dictate a report is a charting issue and does not constitute malpractice. Defendants further argued that even if it were a violation of the standard of practice, plaintiff failed to show how she was harmed by the delay. Plaintiff countered that the delay indirectly harmed her "by the fact that it's information that's being utilized really to her detriment in terms of these proceedings," that the delay in dictation "implies as to how the conduct was during the surgery," and that

---

[3] Review of the trial transcript contradicts this claim. There is no record of defendants' objecting to Dr. Levey's testimony pertaining to res ipsa loquitur.

the information in the report was not accurate regarding what transpired on the day of surgery.

The court denied defendants' motion, stating:

> [I]t may not be a fair focus on the standard of care, which encompasses everything that went into this, not just an operative report, but everything. Frankly, the—the Court would maybe entertain a motion to strike that testimony if . . . you show me a case that says that what a doctor does or does not do within the operative report . . . is not included in the standard of care. But so far the testimony is in, you were allowed cross-examination on it, there's been no motion to object—or to strike the testimony. . . . But if you provide me with a case that says that that is not a part of the standard of care, that is . . . the completing of an operative report, I'll be happy to entertain out of—out of fairness, . . . anything further [in that regard]. But at this juncture, I'm denying your request for directed verdict on that basis.

After both parties rested and gave their closing arguments, the court gave jury instructions that included the following:

> For the purpose of this case, ladies and gentlemen, Dr. Murphy, Dr. McIntosh, Frank Mercandonte, are to all be considered as agents of William Beaumont Hospital. As such, if you find that Dr. Murphy or Dr. McIntosh or Frank Mercandonte were professionally negligent, then William Beaumont Hospital shall be held liable for their negligence.

There is no indication in the record that defendants objected to this or any other instruction. It appears that the parties also agreed to a very basic and general jury verdict form that required the jury to determine (1) whether the defendants were negligent, (2) whether plaintiff sustained damages, (3) whether plaintiff's damages were proximately caused by

defendants' negligence, and (4) the amount of plaintiff's damages.

Following deliberations, the jury returned a verdict for plaintiff, finding that defendants were negligent and that plaintiff was damaged as a result of defendants' negligence. The judgment awarded plaintiff $174,686 in past economic damages and $200,000 in past noneconomic damages. The judgment also awarded $256,678 in future economic damages and $256,678 in future noneconomic damages, both amounts having been reduced to present cash value. The judgment awarded plaintiff noneconomic damages in a total amount reduced from the jury's verdict, pursuant to MCL 600.1483.

The parties filed numerous posttrial motions. Plaintiff filed a motion seeking mediation sanctions under MCR 2.403(O), which the court granted in part, awarding plaintiff $86,583 in attorney fees based on 577.22 hours at a rate of $150 an hour. Plaintiff also asked the court to hold that MCL 600.1483, the statute that places a cap on noneconomic damages in medical malpractice actions, violated plaintiff's constitutional right to a jury trial, violated plaintiff's rights to equal protection and due process, and violated the separation of powers provision of the Michigan Constitution. The trial court concluded that the statute was constitutionally sound and denied plaintiff's motion.

Defendants filed motions to "Reduce the Verdict in Accordance with MCL 600.6303," for judgment notwithstanding the verdict (JNOV), for a new trial, and for remittitur, all of which the court denied. Plaintiff also moved for an additional award of attorney fees under MCR 2.403(O), seeking fees incurred during the

posttrial proceedings. The trial court granted plaintiff's motion in part, awarding an additional 77.3 hours at $150 an hour.

II. DEFENDANTS' APPEAL

A. AMENDING THE COMPLAINT

Defendants first argue that the trial court abused its discretion by granting plaintiff's request to amend her complaint during trial to add a claim of res ipsa loquitur. Defendants claim that the trial court erred by applying MCR 2.118(C)(1) because defendants did not consent to litigate plaintiff's claim of res ipsa loquitur, and that the correct standard governing plaintiff's request was MCR 2.118(C)(2), which required plaintiff to establish that defendants would not be prejudiced by the amendment and that no such showing was made.

MCR 2.118(C), which governs the amendment of complaints at trial, states:

Amendments to Conform to the Evidence.

(1) When issues not raised by the pleadings are tried by express or implied consent of the parties, they are treated as if they had been raised by the pleadings. In that case, amendment of the pleadings to conform to the evidence and to raise those issues may be made on motion of a party at any time, even after judgment.

(2) If evidence is objected to at trial on the ground that it is not within the issues raised by the pleadings, amendment to conform to that proof shall not be allowed unless the party seeking to amend satisfies the court that the amendment and the admission of the evidence would not prejudice the objecting party in maintaining his or her action or defense on the merits. The court may grant an

adjournment to enable the objecting party to meet the evidence.

Defendants argue that subsection C(2) is the applicable standard to apply in this case because they objected to plaintiff's amendment. However, this argument is belied by the clear language of the rule. MCR 2.118(C)(2) applies only where a party objects to admission of *evidence.* Although defendants are correct that they objected to the amendment, defendants did not object to the admission of evidence regarding res ipsa loquitur and subsection C(2) is inapplicable. The trial court correctly reasoned that subsection C(1) is the correct standard here because defendants' failure to object to the admission of res ipsa loquitur evidence implied their consent to litigate the issue. See *Grebner v Clinton Charter Twp,* 216 Mich App 736, 744; 550 NW2d 265 (1996).

Because MCR 2.118(C)(1) was the correct standard, defendants' argument that plaintiff was required to show lack of prejudice to defendants must fail. That requirement of subsection C(2) is not included in subsection C(1). To the contrary, subsection C(1) is liberal and permissive, treating issues tried by consent of the parties "as if they had been raised by the pleadings." The only requirement is that the party seeking amendment move to have the court amend the pleadings, and plaintiff here properly moved for an amendment. The trial court did not abuse its discretion in deciding to allow plaintiff to amend her complaint to conform to the evidence on her theory of res ipsa loquitur.

Defendants also argue that plaintiff failed to prove all the elements of res ipsa loquitur and a new trial should be granted on this basis. However, there is no

indication in the record that defendants raised this issue at trial. Defendants did argue in their motion for JNOV or a new trial that the trial court should have granted their "motion for a directed verdict as to the res ipsa theory." However, defendants had never moved for a directed verdict on plaintiff's res ipsa loquitur claim. This Court need not address issues first raised on appeal, *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993), and we decline to address this argument.

### B. MOTION FOR A DIRECTED VERDICT

Defendants next argue that the trial court erred in denying their motion for a directed verdict on plaintiff's claim that Dr. Murphy was negligent for failing to timely dictate his operative report. Defendants claim that the internal policies of defendant Beaumont and the rules of the Joint Commission on Accreditation of Healthcare Organizations (JCAHO) cannot be used to establish the standard of care for a physician. Defendants are correct in their assertion that internal policies of an institution, including a hospital, cannot be used to establish a legal duty in a negligence claim. See *Buczkowski v McKay*, 441 Mich 96, 99, n 1; 490 NW2d 330 (1992); *Gallagher v Detroit-Macomb Hosp Ass'n*, 171 Mich App 761, 764-765; 431 NW2d 90 (1988). However, we have distinguished between internal policies and external rules promulgated pursuant to law. *Id.* at 765; *Kakligian v Henry Ford Hosp*, 48 Mich App 325, 332; 210 NW2d 463 (1973). In this case, plaintiff alleged not only a violation of internal policy, but also a violation of JCAHO rules. Defendants have not cited any authority hold-

ing that the rules of an external regulatory agency such as JCAHO could not be used to establish defendants' duty to plaintiff. Therefore, we reject defendants' argument that the trial court should have granted its motion for a directed verdict on that basis.

Defendants also argue that a directed verdict on the issue of negligent charting was appropriate because plaintiff failed to show how she was harmed by the delay in dictating the operative report. In order to prove negligence, plaintiff must show not only a duty and a breach of that duty, but that her injuries were caused by the breach. *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). In order to prove causation, plaintiff must show both cause in fact and proximate cause. *Haliw v Sterling Hts*, 464 Mich 297, 310; 627 NW2d 581 (2001). Cause in fact requires plaintiff to show that her injuries would not have occurred but for defendants' negligent conduct. *Id.*

In this case, plaintiff's claimed injuries included (1) severance of her recurrent laryngeal nerve, (2) a prolonged recovery, (3) an additional hospitalization for pneumonia, (4) permanent difficulties in breathing, swallowing, and aspiration, (5) out-of-pocket expenses for medical care related to her physical injuries, and (6) pain and emotional distress. At trial, neither plaintiff nor her expert testified how the delay in dictation harmed her and, in fact, her expert admitted that she was not directly harmed.

On appeal, plaintiff argues that she was harmed because the operative report was the only document that noted that her recurrent laryngeal nerve was severed, and because the operative report was not timely dictated, neither she nor her subsequent medical care

providers were informed of the loss of the nerve. However, plaintiff failed to establish that, but for the lack of knowledge of this condition on the part of her subsequent providers, her claimed injuries would not have occurred. *Id.* Further, the failure to keep adequate records may raise issues regarding credibility or burden of persuasion, but it has no bearing on whether the defendant medical care providers were negligent. *Boyd v Wyandotte*, 402 Mich 98, 104-105; 260 NW2d 439 (1977). Because plaintiff failed to bring forth evidence that she was in fact injured by defendants' negligent charting, the trial court erred in denying defendants' motion for a directed verdict on this issue.

Although the trial court erred in denying the motion for a directed verdict, reversal is required only if allowing the verdict to stand would be inconsistent with substantial justice. MCR 2.613(A).

In this case, the jury returned a general verdict finding that defendants were negligent and that plaintiff's injuries were caused by this negligence. There were no specific findings by the jury regarding how defendants were negligent or how the negligence caused plaintiff's injuries. However, there was sufficient evidence from which the jury could reasonably conclude that defendants were negligent on the basis of plaintiff's alternate theories regarding the severed recurrent laryngeal nerve or the perforated esophagus. Moreover, it is clear from the fact that the jury awarded substantial future damages that the jury found for plaintiff on one or both of those theories, the delayed reporting error clearly having no long-

term effect.[4] We also note that after the denial of the
motion for a directed verdict, defendants did not
request a more detailed verdict form by which the
extent of the jury's reliance on the delayed reporting
theory would have been clearly registered. In the
absence of such a detailed verdict, we cannot con-
clude that defendants have been denied substantial
justice.

### C. OSTENSIBLE AGENCY

In their next assertion of error, defendants argue
that the trial court should have granted defendant
Beaumont's motion for summary disposition because
Dr. Murphy was not an ostensible agent of the hospi-
tal and Beaumont could not have been vicariously lia-
ble for Dr. Murphy's negligence. Although the trial
court did not state whether it decided the motion
under MCR 2.116(C)(8) or (10), the court considered
documentary evidence outside the pleadings. There-
fore, we will analyze the motion under MCR
2.116(C)(10).

A motion for summary disposition under MCR
2.116(C)(10) tests whether there is factual support for
a claim. *Spiek v Dep't of Transportation*, 456 Mich
331, 337; 572 NW2d 201 (1998). When deciding the
motion, the court considers pleadings, affidavits, dep-
ositions, admissions, and other evidence submitted in

---

[4] Thus, this case is not one where "it is impossible to know if the jury
rejected the other theories advanced" rather than the theory that should
have been dismissed by directed verdict. See *Tobin v Providence Hosp*,
244 Mich App 626, 645; 624 NW2d 548 (2001). The present case is also dis-
tinguishable from *Tobin* because, in *Tobin*, the defendants raised a num-
ber of meritorious issues on appeal, thus satisfying the "inconsistent with
substantial justice" test. MCR 2.613(A).

the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the non-movant. *Ritchie-Gamester v Berkley*, 461 Mich 73, 76; 597 NW2d 517 (1999); *Hall v McRea Corp*, 238 Mich App 361, 369-370; 605 NW2d 354 (1999). If the admissible evidence submitted by the parties fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 120-121; 597 NW2d 817 (1999).

We agree with defendants that the evidence of ostensible agency between Dr. Murphy and Beaumont was tenuous at best. In order to prove that Dr. Murphy was the ostensible agent of Beaumont, plaintiff must show that (1) she dealt with Dr. Murphy with a reasonable belief in the physician's authority as an agent of Beaumont, (2) her belief was generated by some act or neglect on the part of the hospital, and (3) she was not guilty of negligence. *Chapa v St Mary's Hosp of Saginaw*, 192 Mich App 29, 33-34; 480 NW2d 590 (1991). Further, an independent relationship between a doctor and a patient that preceded a patient's admission to a hospital precludes a finding of ostensible agency, unless the acts or omissions of the hospital override the impressions created by the preexisting relationship and create a reasonable belief that the doctor is an agent of the hospital. *Hinkleman v Borgess Medical Ctr*, 157 Mich App 314, 323; 403 NW2d 547 (1987); *Strach v St John Hosp Corp*, 160 Mich App 251, 263; 408 NW2d 441 (1987).

Here, it is undisputed that there was a preexisting relationship between plaintiff and Dr. Murphy before she underwent the surgery at Beaumont. Although plaintiff testified that she chose Beaumont because of

a recommendation from her brother, she failed to present any evidence of actions or omissions on the part of Beaumont that would cause plaintiff to reasonably believe that Dr. Murphy was an agent of the hospital. *Chapa, supra.* Because plaintiff was unable to establish that Dr. Murphy was an ostensible agent of Beaumont, the doctor would be presumed to be an independent contractor, and Beaumont would not be vicariously liable for his negligence. *Grewe v Mount Clemens Gen Hosp*, 404 Mich 240, 250; 273 NW2d 429 (1978). To the extent that the trial court found that there was a genuine issue of material fact regarding Beaumont's vicarious liability for Dr. Murphy, the court erred.

However, there was evidence supporting an agency relationship between Dr. McIntosh and Mr. Mercandonte and Beaumont. Defendants presented no evidence of a preexisting relationship between plaintiff and Dr. McIntosh or Mr. Mercandonte, and plaintiff testified that she did not even know of the existence of these two medical professionals until after the surgery. Further, neither plaintiff's nor defendants' experts could determine with any degree of certainty whether the injury to plaintiff's esophagus was caused by the actions or inactions of Dr. Murphy, Dr. McIntosh, or Mr. Mercandonte. Plaintiff's expert testified that, although Dr. Murphy was ultimately responsible for what occurred during the surgery, any one of the three individuals participating in the surgery could have caused the esophageal laceration. Because there were genuine issues of material fact regarding whether Dr. McIntosh and Mr. Mercandonte were ostensible agents of Beaumont and whether one of them caused plaintiff's injury, the trial court did not

err in denying defendant Beaumont's motion for summary disposition.

Further, even if the trial court erred in denying the motion for summary disposition, the error was rendered harmless when defendants failed to object to a jury instruction that specifically informed the jury that Dr. Murphy, Dr. McIntosh, and Mr. Mercandonte were agents of Beaumont. An error in a ruling or order is not a ground for setting aside a verdict or disturbing a judgment unless failure to do so would be inconsistent with substantial justice. MCR 2.613(A). By allowing the jury to be instructed regarding the agency of Dr. Murphy, defendants effectively waived their claim of error arising from the trial court's denial of defendant Beaumont's motion for summary disposition.

### D. COLLATERAL SOURCE

Defendants next claim that the trial court erred in refusing to reduce the amount of economic damages awarded to plaintiff in the verdict by the amount of medical expenses paid by plaintiff's health insurers. Defendants argue that plaintiff's insurers paid more than $88,000 of her medical expenses, yet they claimed less than $30,000 in their liens against plaintiff's judgment. According to defendants, the difference between the amounts paid by plaintiff's insurers and the amounts asserted by the insurers in their liens constitutes a collateral source benefit under MCL 600.6303, and the trial court erred by failing to reduce the judgment pursuant to the requirements of the statute.

MCL 600.6303 provides, in part:

(1) In a personal injury action in which the plaintiff seeks to recover for the expense of medical care, rehabilitation services, loss of earnings, loss of earning capacity, or other economic loss, evidence to establish that the expense or loss was paid or is payable, in whole or in part, by a collateral source shall be admissible to the court in which the action was brought after a verdict for the plaintiff and before a judgment is entered on the verdict. Subject to subsection (5), if the court determines that all or part of the plaintiff's expense or loss has been paid or is payable by a collateral source, the court shall reduce that portion of the judgment which represents damages paid or payable by a collateral source by an amount equal to the sum determined pursuant to subsection (2). This reduction shall not exceed the amount of the judgment for economic loss or that portion of the verdict which represents damages paid or payable by a collateral source.

(2) The court shall determine the amount of the plaintiff's expense or loss which has been paid or is payable by a collateral source. . . .

\*     \*     \*

(4) As used in this section, "collateral source" means benefits received or receivable from an insurance policy; benefits payable pursuant to a contract with a health care corporation, dental care corporation, or health maintenance organization; employee benefits; social security benefits; worker's compensation benefits; or medicare benefits. . . . *Collateral source does not include benefits paid or payable by a person, partnership, association, corporation, or other legal entity entitled by contract to a lien against the proceeds of a recovery by a plaintiff in a civil action for damages, if the contractual lien has been exercised pursuant to subsection (3).*[5] [Emphasis added.]

---

[5] Subsection 3 requires that the plaintiff inform potential lienholders of the verdict within ten days after the verdict is rendered and that the party entitled to a lien exercise that right within twenty days after receiving such notice. The parties do not dispute that plaintiff's insurers properly exercised their rights to a lien under MCL 600.6303(3).

In this case, plaintiff's health care insurers, Blue Cross Blue Shield of Michigan (BCBSM) and Medicare made payments for plaintiff's medical care. Under MCL 600.6303(4), these payments would meet the initial definition of a collateral source benefit. However, BCBSM and Medicare also exercised their right to liens against plaintiff's verdict. According to documents filed in the lower court record, as of April 1999, Medicare was seeking approximately $20,000 in benefits paid and BCBSM was seeking approximately $1,700. MCL 600.6303(4) further states that "benefits paid or payable by a . . . corporation, or other legal entity entitled by contract to a lien against the proceeds of a recovery by a plaintiff in a civil action for damages, if the contractual lien has been exercised pursuant to subsection (3)" are not a collateral source. Here, as of April 1999, BCBSM and Medicare properly exercised their liens under the statute. The record is not clear whether they have further exercised their lien rights since then or whether they may do so in the future. Regardless of those considerations, the statute does not make any provision for a situation where a lien has been exercised, but for an amount less than the lienholder would be legally entitled to recover. Because the statute clearly states that benefits subject to an exercised lien do not qualify as a collateral source, and BCBSM and Medicare exercised their liens, health insurance benefits provided by BCBSM and Medicare to plaintiff do not constitute a collateral source under MCL 600.6303(4). Because we will not reverse a decision of a trial court where the right result is reached for the wrong reason,[6] *Zimmerman*

---

[6] The trial court concluded that defendants had the burden of proving that BCBSM or Medicare was entitled to more than they claimed in their liens, and defendants did not present evidence supporting their assertion.

*v Owens*, 221 Mich App 259, 264; 561 NW2d 475 (1997), we affirm the trial court's decision.

### E. MEDIATION SANCTIONS

In their final assertion of error, defendants argue that the trial court should have denied plaintiff's request for supplemental mediation sanctions for attorney fees incurred during posttrial proceedings. Defendants' sole argument is that the requested fees were unreasonable and excessive. According to defendants, the issues in the posttrial motions were not novel or difficult, or they involved arguments the court had addressed before the trial. Defendants do not challenge the court's initial decision to award mediation sanctions, or whether the trial court had the discretion to award attorney fees incurred in post-trial proceedings.

Where the trial court determines that sanctions are appropriate, the actual costs to be charged are the costs taxable in any civil action plus a reasonable attorney fee. MCR 2.403(O)(6); *Forest City Enterprises, Inc v Leemon Oil Co*, 228 Mich App 57, 81; 577 NW2d 150 (1998). A reasonable attorney fee must be based on a reasonable hourly or daily rate for ser-

---

We agree with the trial court that defendants carry the burden of proving this fact. MCL 600.6303(1) states that evidence of collateral source benefits is admissible in the court after a verdict for the plaintiff, suggesting that defendants were obligated to present evidence. The statute then requires the court to make a determination whether "all or part of plaintiff's expense or loss has been paid or is payable by a collateral source." *Id.* Here, defendants' evidence of a disparity between the amounts paid by the insurers and the amounts claimed by the insurers in their liens was sketchy, but it was not specifically contradicted by plaintiff. Therefore, defendants did meet their burden of producing evidence that plaintiff's insurers paid more than the amounts sought in their liens. To the extent that the trial court determined that defendants failed to meet their burden of proving that there were collateral source benefits, this finding was clearly erroneous. MCR 2.613(C).

vices necessitated by the rejection of the evaluation. MCR 2.403(O)(6)(b); *Rafferty v Markovitz*, 461 Mich 265, 267; 602 NW2d 367 (1999).

In determining a reasonable hourly rate, the trial court should consider relevant criteria, including "the professional standing and experience of the attorney; the skill, time and labor involved; the amount in question and the results achieved; the difficulty of the case; the expenses incurred; and the nature and length of the professional relationship with the client." *Temple v Kelel Distributing Co, Inc*, 183 Mich App 326, 333; 454 NW2d 610 (1990). Reasonable fees are not equivalent to actual fees charged. *Cleary v Turning Point*, 203 Mich App 208, 212; 512 NW2d 9 (1993). Taxable costs can include fees incurred post-trial. *Joerger v Gordon Food Service, Inc*, 224 Mich App 167, 178-179; 568 NW2d 365 (1997).

In this case, the trial court properly exercised its discretion in determining that plaintiff was entitled to 77.3 hours of attorney fees at $150 an hour. The trial court's determination that $150 an hour was an appropriate rate was not unreasonable on its face, given the duration of the posttrial proceedings and the fact that plaintiff's counsel was an experienced trial attorney. Further, the court's decision to award 77.3 hours was not excessive when considering the number of posttrial motions requiring extensive briefing and hearings, and the fact that plaintiff originally sought more than 135 hours. The trial court's decision was neither grossly violative of fact and logic nor did it show a perversity of will, a defiance of judgment, or the exercise of passion or bias. *Elia v Hazen*, 242 Mich App 374, 377; 619 NW2d 1 (2000); *Michigan Basic Property Ins Ass'n v Hackert Furniture Dis-*

*tributing Co, Inc,* 194 Mich App 230, 235; 486 NW2d
68 (1992).

### III. PLAINTIFF'S CROSS-APPEAL

#### A. HOURLY RATE

In a related issue, plaintiff argues on cross-appeal
that the trial court abused its discretion by deciding
to reduce the hourly rate for the attorney fees she
was awarded pursuant to MCR 2.403(O). Plaintiff
sought $350 an hour for her attorney's time; however,
the trial court decided to reduce that rate to $150 an
hour. According to plaintiff, her counsel's experience,
skill, and reputation, combined with the difficulty of
the case, required a higher hourly rate. Plaintiff also
claims that her counsel was granted a higher hourly
rate in a successful suit several years earlier. Defen-
dant counters that $150 an hour was a reasonable
rate given the circumstances of the case. The trial
court stated, simply: "The Court is convinced, based
on Defendant's arguments, Plaintiff's arguments, and
having witnessed the trial, as well as cases with simi-
lar scenarios to this one which have appeared before
this Court, that $150/hour is reasonable."

The determination of a reasonable hourly rate for
attorney fees to be awarded the prevailing party as a
mediation sanction is within the trial court's discre-
tion, *Hackert, supra* at 236, and we find no abuse of
discretion in this case. Although the hourly rate was
much lower than the rate sought by plaintiff, it was
not so low as to be completely outside the range of
hourly rates typically charged by attorneys with the
level of experience of plaintiff's counsel. Further, it is
clear that the trial court properly considered the fac-
tors argued by both parties, as well as personal obser-

vations from trial in making its determination, and the
factors the court considered were appropriate factors.
*Temple, supra.*

### B. CONSTITUTIONALITY OF MCL 600.1483

Plaintiff also raises several issues pertaining to the
constitutionality of MCL 600.1483, which imposes a
limit on the amount of noneconomic damages a per-
sonal injury plaintiff can recover.[7] Statutes are pre-
sumed to be constitutional, and we have a duty to
construe a statute as "constitutional unless its uncon-

---

[7] MCL 600.1483 states, in pertinent part:

(1) In an action for damages alleging medical malpractice by or
against a person or party, the total amount of damages for
noneconomic loss recoverable by all plaintiffs, resulting from the
negligence of all defendants, shall not exceed $280,000.00 unless, as
the result of the negligence of 1 or more of the defendants, 1 or
more of the following exceptions apply as determined by the court
pursuant to section 6304, in which case damages for noneconomic
loss shall not exceed $500,000.00:

(a) The plaintiff is hemiplegic, paraplegic, or quadriplegic result-
ing in a total permanent functional loss of 1 or more limbs caused
by 1 or more of the following:

(i) Injury to the brain.

(ii) Injury to the spinal cord.

(b) The plaintiff has permanently impaired cognitive capacity
rendering him or her incapable of making independent, responsible
life decisions and permanently incapable of independently perform-
ing the activities of normal, daily living.

(c) There has been permanent loss of or damage to a reproduc-
tive organ resulting in the inability to procreate.

                    *        *        *

(4) The state treasurer shall adjust the limitation on damages for
noneconomic loss set forth in subsection (1) by an amount deter-
mined by the state treasurer at the end of each calendar year to
reflect the cumulative annual percentage change in the consumer
price index. . . .

It is undisputed in this case that none of the exceptions of subsections
1(a)–(c) apply to plaintiff and that the pertinent limitation in this case, as
adjusted according to subsection 4, was $320,600.

stitutionality is clearly apparent." *McDougall v Schanz*, 461 Mich 15, 24; 597 NW2d 148 (1999). The party challenging the constitutionality of a statute has the burden of proving the invalidity of the law. *In re Trejo Minors*, 462 Mich 341, 355; 612 NW2d 407 (2000). A statute is not unconstitutional merely because it is undesirable, unfair, or unjust. *In re Juvenile Commitment Costs*, 240 Mich App 420, 440; 613 NW2d 348 (2000).

### 1. TRIAL BY JURY

Plaintiff first claims that the limitation on noneconomic damages in MCL 600.1483 infringes her right to trial by jury guaranteed under the Michigan Constitution. Plaintiff argues that her right to a jury trial includes the right to have all the fact questions of her case, including the amount of damages, determined by a jury. According to plaintiff, the statutory cap on noneconomic damages, which is imposed by the court after the verdict, interferes with the jury's determination of damages, thereby violating her right to trial by jury.

The Michigan Constitution guarantees plaintiffs in civil suits the right to trial by jury. Const 1963, art 1, § 14.[8] Because the right to a jury trial may be waived, our Supreme Court has interpreted this right as permissive, not absolute. *McKinstry v Valley Obstetrics-Gynecology Clinic, PC*, 428 Mich 167, 183; 405 NW2d 88 (1987). The right to a jury trial includes the right to have damages determined by a jury. *Leary v Fisher*, 248 Mich 574, 578; 227 NW 767 (1929). However, in

---

[8] Const 1963, art 1, § 14 states, in part, that "[t]he right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law."

certain circumstances, a trial court may reduce a jury verdict without violating the right to a jury determination of damages. *Id.* (trial court may order a new trial unless a plaintiff agrees to accept a reduced verdict); *Heinz v Chicago Rd Investment Co*, 216 Mich App 289, 299-300; 549 NW2d 47 (1996) (statute requiring that a jury damage award be reduced by the amount a plaintiff receives from a collateral source does not violate the right to a jury trial).

Although our Court has not addressed whether MCL 600.1483 violates the right to a jury trial, a panel recently addressed the constitutionality of an analogous provision of MCL 257.401(3). In *Phillips v Mirac, Inc*, 251 Mich App 586; 651 NW2d 437 (2002), the panel held that a statutory damages cap imposed by MCL 257.401(3) does not violate a plaintiff's right to a jury trial for two reasons.[9] The panel first noted that the Legislature has the authority "to abolish or modify common-law and statutory rights and remedies." *Phillips, supra* at 592. In addition, the panel concluded that MCL 257.401(3) "does not impinge on a jury's right to decide cases" because the damages cap "in no way removes from the jury the determination of the facts and of the amount of damages . . . incurred." *Id.* at 594. "In other words, [MCL 257.401(3)] only limits the legal consequences of the jury's finding. Once the jury has reached its verdict,

---

[9] MCL 257.401(3) addresses the civil liability of persons engaged in the leasing of motor vehicles for injury caused by the negligent operation of the leased vehicle. The provision at issue in *Phillips* states, in pertinent part, that

[u]nless the lessor, or his or her agent, was negligent in the leasing of the motor vehicle, the lessor's liability under this subsection is limited to $20,000.00 because of bodily injury to or death of 1 person in any 1 accident and $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident.

the trial judge merely enters a judgment on the verdict that is consistent with the law." *Id.* (Citations omitted.)

The reasoning in *Phillips* is equally applicable to the facts of this case and the requirements of MCL 600.1483. Plaintiff was able to try this case in front of a jury that rendered a verdict awarding plaintiff damages. Because MCL 600.6304(5) prohibits the trial court from informing the jury of the noneconomic damages limitation of MCL 600.1483,[10] the jury rendered its damages award on the basis of the facts of the case, unaware of the limitation of the statute. There is no allegation here that the jury was constrained in reaching its verdict because of the requirements of MCL 600.1483.

Rather, plaintiff appears to argue that art 1, § 14 guarantees her not only the right to have a jury determine her damages, but the unfettered right to recover precisely what the jury awarded. In essence, plaintiff is challenging the right of the Legislature to limit her remedy. As was noted in *Phillips, supra* at 592, the Legislature has the authority to change or abolish common-law tort claims, including the ability to limit remedies for such claims.[11] Const 1963, art 3, § 7;

---

[10] MCL 600.6304(5) states, in pertinent part:

In an action alleging medical malpractice, the court shall reduce an award of damages in excess of 1 of the limitations set forth in section 1483 to the amount of the appropriate limitation set forth in section 1483. The jury shall not be advised by the court or by counsel for either party of the limitations set forth in section 1483 or any other provision of section 1483.

[11] Contrary to the argument raised by our dissenting colleague, *post* 83-84, the malpractice cause of action at issue here is not provided or guaranteed by any constitutional provision. The constitution's guarantee of a trial by jury does not constitute a *sub silentio* guarantee that the causes of action demanding factfinding by a jury will be inviolate. In other words,

*Shavers v Attorney General,* 402 Mich 554, 612, n 36;
267 NW2d 72 (1978); *Donajkowski v Alpena Power
Co,* 460 Mich 243, 256, n 14; 596 NW2d 574 (1999). We
" 'can discern no logical reason why a statutory limi-
tation on a plaintiff's remedy is any different than
other permissible limitations on the ability of plain-
tiffs to recover in tort actions.' " *Phillips, supra* at
593, quoting *Kirkland v Blaine Co Medical Center,*
134 Idaho 464, 468; 4 P3d 1115 (2000).

In sum, we hold that the noneconomic damages
limitation of MCL 600.1483 is not a violation of plain-
tiff's right to a jury trial because the Legislature has
the authority to limit remedies in tort actions, and the
limitations of this statute impede neither plaintiff's
ability to present her case to a jury nor the jury's abil-
ity to determine the factual extent of plaintiff's
damages.

### 2. EQUAL PROTECTION[12]

Plaintiff also argues that the provisions of MCL
600.1483 limiting her right to recover noneconomic
damages violates her right to equal protection under
the Michigan and United States Constitutions. Plain-

---

the constitution guarantees the process by which legal disputes are to be
determined, not the causes of action that give rise to those disputes.

[12] Plaintiff also claims that the statute violates her right to due process.
However, she failed to brief this issue, focusing solely on her arguments
regarding equal protection. A party may not merely announce her position
and leave it to this Court to discover and rationalize the basis for her
claims, *Wilson v Taylor,* 457 Mich 232, 243; 577 NW2d 100 (1998), nor may
she give issues cursory treatment with little or no citation of supporting
authority, *Silver Creek Twp v Corso,* 246 Mich App 94, 99; 631 NW2d 346
(2001). Furthermore, even if this issue were properly before us, we would
find no violation. As noted in *Phillips, supra* at 598, the tests for whether
legislation violates the Due Process and Equal Protection Clauses of the
Michigan Constitution are essentially the same. Because MCL 600.1483
survives an equal protection challenge, it also survives plaintiff's due pro-
cess challenge.

tiff argues that the damages limitation is based on a classification scheme that treats medical malpractice plaintiffs differently from others. We disagree.

Both the United States and Michigan Constitutions guarantee equal protection of the law. US Const, Am XIV; Const 1963, art 1, § 2; *Frame v Nehls*, 452 Mich 171, 183; 550 NW2d 739 (1996). To determine whether a legislative classification violates equal protection, the reviewing court applies one of three tests. *Crego v Coleman*, 463 Mich 248, 259; 615 NW2d 218 (2000). If the legislation creates an inherently suspect classification or affects a fundamental interest, the "strict scrutiny" test applies. *Vargo v Sauer*, 457 Mich 49, 60; 576 NW2d 656 (1998). Other classifications that are suspect but not inherently suspect are subject to the "substantial relationship" test. *Neal v Oakwood Hosp Corp*, 226 Mich App 701, 717; 575 NW2d 68 (1997). However, social and economic legislation is generally examined under the traditional "rational basis" test. *Wysocki v Felt*, 248 Mich App 346, 354; 639 NW2d 572 (2001).

Plaintiff's argument that strict scrutiny should be applied to this statute is without merit. As was recently noted in *Phillips, supra*, the classification schemes created by various tort reform legislation are social or economic legislation subject to the rational basis test. *Id.* at 596-597; see also *Heinz, supra* at 300; *Stevenson v Reese*, 239 Mich App 513, 517; 609 NW2d 195 (2000). In addition, we reject plaintiff's argument that distinguishing between medical malpractice plaintiffs and other personal injury plaintiffs creates a suspect classification. In *Stevenson*, we rejected a similar argument that distinguishing between insured and uninsured motorists under Michigan's no-fault act created a suspect classification. *Id.*

at 518. A class of personal injury plaintiffs cannot be compared to classes based on race, gender, or mental incapacity. *Id.*[13] Therefore, the appropriate standard for analyzing plaintiff's equal protection claim is the rational basis test.

Under the rational basis test, legislation is presumed to be constitutional and will survive review if the classification scheme is rationally related to a legitimate governmental purpose. *Phillips, supra; Vargo, supra.* The burden of proof is on the person attacking the legislation to show that the classification is arbitrary. *Yaldo v North Pointe Ins Co,* 457 Mich 341, 349; 578 NW2d 274 (1998). " 'Rational-basis review does not test the wisdom, need or appropriateness of the legislation,' " and the challenged statute is not invalid for lack of mathematical precision in its classification or because it results in some inequity. *Phillips, supra* at 597, quoting *Crego, supra* at 260.

The statute at issue here is rationally related to a legitimate governmental purpose. The 1993 legislation that created the current finite limitation scheme was prompted by the Legislature's concern over the effect of medical liability on the availability and affordability of health care in the state. See House Legislative Analysis, SB 270 and HB 4033, 4403, and 4404, April 20, 1993, pp 1-2. The purpose of the damages limitation was to control increases in health care costs by reducing the liability of medical care providers, thereby reducing malpractice insurance premiums, a large component of health care costs. *Id.* Controlling health care costs is a legitimate governmental purpose. By limiting at least one component of health

---

[13] Further, because we have determined that MCL 600.1483 does not violate plaintiff's right to a jury trial, plaintiff's argument that strict scrutiny applies because a fundamental right is affected fails as well.

care costs, the noneconomic damages limitation is rationally related to its intended purpose. Because the noneconomic damages cap of MCL 600.1483 is rationally related to a legitimate governmental purpose, the statute does not violate plaintiff's right to equal protection.

### 3. SEPARATION OF POWERS

In her final argument, plaintiff claims that MCL 600.1483 and MCL 600.6304 are unconstitutional because they constitute impermissible legislative intrusions on the rulemaking power of the judicial branch of state government. According to plaintiff, the rules interfere with the court's duty to instruct the jury on the applicable law and with the court's function as the forum for redressing grievances. Again, we disagree.

The separation of powers doctrine of the Michigan Constitution is derived from a provision in article 3 stating that "[n]o person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." Const 1963, art 3, § 2. The constitution also grants the Supreme Court the authority to make rules that "establish, modify, amend and simplify the practice and procedure in all courts of this state." Const 1963, art 6, § 5. However, that authority extends only to matters of practice and procedure, and the Legislature, not the courts, has the authority to enact substantive law. Const 1963, art 3, § 7; *McDougall, supra* at 27, 36.

Because the Legislature may change the substantive law without infringing the Supreme Court's rulemaking authority, MCL 600.1483 and MCL

600.6304 violate the separation of powers doctrine only if the statutes are purely procedural. A statute is procedural when there is " 'no clear legislative policy reflecting considerations other than judicial dispatch of litigation.' " *McDougall, supra* at 30, quoting *Kirby v Larson*, 400 Mich 585, 598; 256 NW2d 400 (1977). In other words, if the statutes in question are grounded on policy considerations other than regulating the procedural operations of the judiciary, they do not impermissibly infringe the Supreme Court's rulemaking authority.

In this case, it is apparent that the statutes in question reflect legislative policy considerations other than court practice and procedure. As stated above, these statutes are intended to address perceived crises in the health care system. The purpose of the statutes is to control health care costs by reducing medical malpractice liability. Because the statutes are substantive in nature, rather than procedural, they do not infringe the Supreme Court's rulemaking authority.

We affirm.

GAGE, J., concurred.

FITZGERALD, P.J. (*dissenting.*) I respectfully dissent because I believe the damages cap in MCL 600.1483, the statute that places a cap on noneconomic damages in medical malpractice actions, violates the right to trial by jury as guaranteed by the Michigan Constitution. I would reverse the trial court's finding that the statute is constitutionally sound.

In *Phillips v Mirac, Inc*, 251 Mich App 586, 591-594; 651 NW2d 437 (2002), a panel of this Court analyzed

an analogous provision of MCL 257.401(3)[1] and held
that a statutory damages cap imposed by MCL
257.401(3) does not violate a plaintiff's right to a jury
trial because (1) the Legislature had the authority to
abolish or modify common-law and statutory rights
and remedies and (2) the statute did not infringe a
jury's right to decide cases because the damages cap
"in no way removes from the jury the determination
of the facts and of the amount of damages . . .
incurred." The majority in the present case has con-
cluded that the reasoning in *Phillips* is equally appli-
cable to the facts of this case and the requirements of
MCL 600.1483.

In his dissenting opinion in *Phillips*, Judge METER
found the damages cap in MCL 257.401(3) violates the
right to trial by jury as guaranteed by the Michigan
Constitution because our constitution confers a right
to trial by jury and because the right to trial by jury in
Michigan extends to a determination of damages.
*Phillips, supra* at 599. In addressing the *Phillips*
majority's statement that "[w]here the Legislature can
abolish a cause of action, it necessarily follows that it
can limit the damages recoverable for the cause of
action," Judge METER opined:

> The fatal flaw with this argument is that the existence of
> a particular cause of action, at least in many instances, is
> not mandated *by the constitution.* Many causes of action
> are creatures of the Legislature, and therefore the Legisla-
> ture is free to abolish these causes of action. The right to a
> jury trial, on the other hand, is indeed mandated by the con-
> stitution, as discussed earlier. Accordingly, the Legislature

---

[1] MCL 257.401(3) addresses the civil liability of persons engaged in the
leasing of motor vehicles for injury caused by the negligent operation of
the leased vehicle.

is *not free* to abrogate this right. In other words, while the Legislature may take away what *it* has given, it may not take away what *the constitution* has given. [*Id.* at 600 (emphasis in original).][2]

In addressing the *Phillips* majority's statement that "the damages cap . . . in no way removes from the jury the determination of facts and of the amount of damages that the injured plaintiff incurred," Judge METER opined:

> Once again, this logic is fatally flawed. Indeed, in a case such as the instant one, having the jury "determin[e] . . . [the] facts and . . . the amount of damages that the injured plaintiff incurred" but then arbitrarily reducing this amount to a prescribed statutory number renders the jury's function purely illusory. [*Id.* at 601.]

In distinguishing the doctrine of remittitur, Judge METER explained that

> this type of diminution, unlike one that occurs as a result of a statutory damages cap, does not render the jury's role illusory. Indeed, in cases of remittitur, a court may lower the jury's determination of damages *as a matter of law only after determining that the award is unsupported by the evidence introduced at trial.* See *Szymanski v Brown,* 221 Mich App 423, 431; 562 NW2d 212 (1997). By contrast, a statutory damages cap mandates a reduction solely because of legislative fiat, notwithstanding that a much greater amount of damages may be supported by the evidence

---

[2] I disagree with the majority's interpretation of this analysis. My position is not that the cause of action at issue here is guaranteed by any constitutional provision. Indeed the language quoted from Judge METER's analysis indicates that particular causes of action are generally not mandated by the constitution. Rather, once the Legislature creates a cause of action, the Legislature cannot take away the right to a jury trial for that cause of action because the right to a jury trial is mandated by the constitution. As discussed earlier, the right to a jury trial extends to a determination of damages.

introduced at trial. [*Phillips, supra* at 602 (emphasis in original).]

Thus, Judge METER concluded that

> the statute at issue required the trial court to arbitrarily reduce the amount of damages awarded by the jury without any determination regarding whether the award was supported by the evidence at trial. The necessary component of judicial discretion was eviscerated, and the constitutional right to trial by jury was violated. [*Id.* at 603.]

I agree with Judge METER's reasoning and find that it applies equally to the statutory provision at issue in this case. For the reasons stated by Judge METER in his dissent in *Phillips*, I would hold that the damages cap in MCL 600.1483 violates the right to trial by jury as guaranteed by the Michigan Constitution.