DIXON *v.* GRAND TRUNK WESTERN RAILWAY CO.

1. MASTER AND SERVANT—RULES—EFFECT.

Rules defining the duties of certain employés, to whom the running and immediate control of trains is confided, are essentially private regulations of the master in the orderly and prudent conduct of its business, and do not fix the obligations and liability of the master to its servants, nor to third persons and the public; those obligations, being fixed by law, cannot be diminished by such rules, nor, ordinarily, increased thereby.    Per HOOKER, J., GRANT, C. J., and OSTRANDER, J.

2. SAME—PERSONAL INJURIES—RULES—VIOLATION—EVIDENCE.

Plaintiff, a crossing tender, was injured by the derailment of certain cars, the evidence showing that the switch had been set for the main line but not locked as required by a rule of the master. *Held*, that negligence of the master cannot be predicated on a failure to enforce the rule. Per HOOKER, J., GRANT, C. J., and OSTRANDER, J.

3. SAME—PERSONAL INJURIES—FELLOW-SERVANT.

A crossing tender and a switchman are fellow-servants, and a master is not liable for injuries to one caused by the negligence of the other.

Error to Calhoun; North, J. Submitted November 9, 1908. (Docket No. 109.) Decided December 21, 1908.

Case by Alexander Dixon against the Grand Trunk Western Railway Company for personal injuries. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*J. M. & J. L. Powers*, for appellant.

*Harrison Geer* (*W. K. Williams*, of counsel), for appellee.

HOOKER, J. This cause was before us at the January term, 1907, on an appeal taken by the defendant, and was reversed. 147 Mich. 667. The jury had been instructed that—

" If the plaintiff could recover at all under the evidence, it must be upon the theory that  *  *  *  he was injured by negligence of the defendant, in failing to provide the plaintiff with a reasonably safe place in which to discharge his duties;  *  *  *  that being such a duty that it (defendant) could not avoid such responsibility by shifting it or delegating its discharge to its servants or agents."

The opinion states that the negligence charged was the omission to keep a certain switch, constituting a part of its railroad, securely locked and fastened when not in use, and in omitting to employ competent and careful persons

to do so. It was said in the opinion that "the duty of keeping switches closed and locked while not in use was not one of the absolute duties of the defendant, but an assignable duty relating to a detail of operation, which could properly be delegated to an employé," and that the court should have directed a verdict for the defendant, obviously upon the ground that plaintiff received his injury through the negligence of a fellow-servant.

Subsequently, the plaintiff was allowed to add a count to his declaration, in which it was alleged: That it was the duty of the defendant to make and publish rules for the conduct of its business and the guidance and control of its agents and employés in operating switches, and that it did so, and that it then became defendant's duty to exercise such reasonable supervision and control over its employés, etc., as to have reason to believe that such rules were being complied with. Further, that for a year prior to the 28th of February, 1903, defendant disregarded its alleged duty and did not keep and maintain said switches at Battle Creek securely closed and locked when not in use, but knowingly and wilfully permitted the same to be and remain open and not locked when not in use, and kept incompetent, careless, and negligent servants, who frequently left said switches open and unlocked when not in use. Also, that it negligently ran its trains at a rate of speed exceeding 10 miles per hour. Also, that it knowingly suffered its agents to leave said switches open and unlocked, and this notwithstanding the fact that at divers times during the period of six months prior to February 28, 1903, plaintiff notified the defendant of such habitual negligence of its servants, and that he was promised that such negligence should cease, and that, relying on such promise, plaintiff continued in its employ, and on February 28, 1903, was injured through the derailing of a train occasioned by the moving of an unlocked switch while said train was passing over it. To this count the statute of limitations was pleaded; it having been added after the expiration of three years from the time of plaintiff's

injury.  The court directed a verdict for the defendant upon the grounds:

(1) The evidence fails to show negligence on the part of the defendant.

(2) If there was negligence, it was that of plaintiff's fellow-servant.

(3) If this switch was left open several times, plaintiff by remaining there at his work assumed the risk.

Counsel for defendant say, in answer to plaintiff's contention, that the direction was proper:

(1) Because the count added was barred by the statute. Act No. 155, Pub. Acts 1899.

(2) Defendant was guilty of no negligence.

Upon this record, plaintiff bases his claim of negligence upon two rules of the company regarding the handling of switches.  He says that the men did not obey these rules; that such disobedience was habitual and so common that the defendant knew or should, by the exercise of ordinary diligence, have known and corrected it, and therefore it was guilty of negligence which was the cause of plaintiff's injury.  The rules in question are as follows:

"They will, except where yard masters are employed, be held responsible for the proper position and security of switches and safety appliances at their stations, and must personally know that all switches are set and locked on the main track at least ten minutes before any regular train is due, and before leaving their stations at night. This is not intended to relieve conductors and others from the care of switches they may use.  Agents must know that their tracks are clear and unobstructed, and stop approaching trains unless all is right.

"Conductors will be held responsible for the proper adjustment of switches used by them and their men.  Whoever opens a switch shall remain at it until it is closed unless relieved by some other competent employé.  When there is more than one train to use a switch, it must not be left open unless one of the trainmen of the following train is at the switch and takes charge of it.  At meeting or passing points, when the train is on siding to clear and switch locked on main track, the man in charge of switch

must take his position on opposite side of track, keeping at least 30 feet from switch target until expected train has passed.

" When a train backs in on a siding to meet or be passed by another train, the engine man when his engine is clear of the main track will also be responsible for seeing that the switch is properly set for the main track."

These rules define the duties of certain employés to whom the running and immediate control of trains is confided. They are essentially private regulations of the defendant in the orderly and prudent conduct of its business. These rules do not fix the obligations and liability of the defendant to its employés, nor even to third persons and the public. Those are fixed by law. They could not be diminished by such rules, neither are they increased ordinarily thereby.

It is assumed (not proven) that the cause of this derailment was the want of a padlock upon the switch. While it may be admitted that, if the blocking of the switch lever was in place and securely padlocked, the rail would be firmly held from moving, there is nothing to indicate that the blocking in place without any padlock would not be equally effective to hold the switch and rail. If the omission to lock has been habitual, as counsel assert, the immunity from accident in the past would seem to demonstrate this, and there is nothing in this record to indicate that it is not the common practice of defendant's servants to run its engines and cars over unlocked switches. Indeed, the only requirements of these rules as to locking are that the agent shall see that main track switches shall be " *set and locked* at least ten minutes before any regular train is due, and before the agent leaves his station at night," and that trainmen, whose train is on a siding at meeting or passing points, shall see that the main track switch is locked. As to all other switches, and as to main track switches, except as above, the only requirement is that whoever opens a switch shall stay at such switch until it is closed, unless relieved, etc.

Perhaps these rules are only made to protect against possible meddling. The evidence indicates that this switch was set for the main track; a switch engine crew having so placed it a short time before. The engine and two cars of the derailed train kept the main track, and, while the front truck of the third car did the same, the rear truck of that car went upon the siding, indicating that the rail moved after the third car struck the switch. The reason for this is not shown, but it is, perhaps, inferable that the switch lever may not have been blocked, through the negligence of the last switchman. If so, this was plainly the negligence of a fellow-servant. The question raised in this case, viz., whether we can predicate negligence on a failure to enforce this rule, was passed on in the case of *McKernan* v. *Railway Co.*, 138 Mich. 519 (68 L. R. A. 347), in the concurring opinion, which was concurred in as to this question by the full bench, in the following language:

"The existence of this rule did not add to the defendant's obligations to the public as shown by the opinion filed herewith." See opinion of Montgomery, J., page 524.

It is unnecessary to repeat what was said in the opinion thus approved, or in the case of *Fonda* v. *Railway Co.*, 71 Minn. 438, there quoted.

It was not error for the learned circuit judge to decline to submit to the jury the question:

"Was defendant negligent in failing to enforce its rule to lock switches?"

Another reason for affirming his judgment is that the evidence in the case does not show that notice of the disregard of the rule was given the defendant, and there is no proof of such habitual disregard as would justify the inference that it ever reached defendant's knowledge that there was such, or that it ever made any promise to stop it. Furthermore, the evidence does not warrant the inference that there *was any* habitual disobedience of the

rule.   As we said in our former opinion, if the accident was due to negligence, it was that of a fellow-servant for which the master is not liable.

The judgment is affirmed.

GRANT, C. J., and OSTRANDER, J., concurred.   MOORE and MCALVAY, JJ., concurred upon the last ground stated.