GALLAGHER v DETROIT-MACOMB HOSPITAL ASSOCIATION

Docket No. 95084. Submitted May 19, 1988, at Detroit. Decided October 3, 1988.

Hugh and Ann Gallagher brought a medical malpractice action in the Macomb Circuit Court against Detroit-Macomb Hospital Association after Hugh Gallagher suffered a fractured hip in a fall from bed while a patient at South Macomb Hospital, a division of defendant hospital association. Plaintiffs alleged negligence in defendant's failure to secure Hugh Gallagher to his bed. Before trial commenced Hugh Gallagher died from causes unrelated to his fall and Ann Gallagher continued the action individually and as personal representative of Hugh Gallagher's estate. The trial court, Robert J. Chrzanowski, J., granted a motion by defendant to exclude from trial evidence of defendant's internal rules and regulations concerning its nursing personnel and an incident report prepared by the hospital staff. Plaintiff's applications for leave to file an interlocutory appeal from the trial court's ruling were denied both by the Court of Appeals and the Supreme Court. Following a jury trial, a judgment of no cause of action was entered consistent with the verdict. Plaintiff appealed.

The Court of Appeals *held:*

1. The doctrine of law of the case does not preclude plaintiff from appealing the trial court's ruling on the motion in limine since the denial of leave to file an interlocutory appeal did not address the merits of plaintiff's claims on appeal.

2. Internal rules and regulations of a hospital, such as defendant's rules concerning restraint of patients, charting of observations and monitoring of changes in behavior, do not establish the applicable standard of care which should be met

REFERENCES

Am Jur 2d, Hospitals and Asylums §§ 42, 43.

Am Jur 2d, Physicians, Surgeons, and other Healers §§ 205 *et seq.,* 345 *et seq.*

Physician-patient privilege as extending to patient's medical or hospital records. 10 ALR4th 552.

Necessity of expert evidence to support action against hospital for injury to or death of patient. 40 ALR3d 515.

by a hospital and its staff for purposes of determining liability in a malpractice action. The trial court did not err in excluding evidence of defendant's rules and regulations.

3. The trial court did not err in ruling that evidence of the incident report prepared at the time of Gallagher's fall was privileged under the Public Health Code provision which protects from disclosure records, data and knowledge collected as part of a hospital's review of its practices and procedures to improve the quality of patient care and reduce morbidity and mortality.

Affirmed.

1. NEGLIGENCE — MEDICAL MALPRACTICE — STANDARD OF CARE — HOSPITALS.

The internal rules and regulations of a hospital do not establish the applicable standard of care which should be met by a hospital and its staff for purposes of determining liability in a malpractice action.

2. NEGLIGENCE — MEDICAL MALPRACTICE — STANDARD OF CARE — HOSPITALS.

Expert testimony is required to establish the standard of care required of a hospital unless the lack of professional care is so manifest that the ordinary layman would recognize it.

3. NEGLIGENCE — MEDICAL MALPRACTICE — STANDARD OF CARE — PHYSICIANS AND NURSES.

In general, the standard required of physicians and nurses is that they possess and carefully apply such skill and learning as are ordinarily possessed by practitioners in their community.

4. EVIDENCE — HOSPITALS — PRIVILEGE.

An evidentiary privilege extends to records, data and knowledge collected for or by an individual or committee assigned by a hospital to review, pursuant to the Public Health Code, its practices and procedures to improve the quality of patient care and reduce morbidity and mortality (MCL 333.20175[5], 333.21515; MSA 14.15[20175][5], 14.15[21515]).

*Chambers, Steiner, Mazur, Ornstein & Amlin, P.C.* (by *Angela J. Nicita*), for plaintiff.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Susan Healy Zitterman*), for defendant.

Before: HOOD, P.J., and CYNAR and R. B. BURNS,*
JJ.

HOOD, P.J. This dispute involves a medical mal-
practice action for a fractured hip sustained by
Hugh Gallagher while a patient at South Macomb
Hospital, a division of defendant Detroit-Macomb
Hospital Association (DMHA). Mr. Gallagher was
deceased at the time of trial due to causes unre-
lated to this action. Plaintiff Ann Gallagher, indi-
vidually and as personal representative of the
estate of her husband Hugh Gallagher, appeals as
of right following a jury verdict in favor of defen-
dant. Specifically she takes issue with orders of the
trial court prohibiting the introduction at trial of
defendant's internal rules and regulations concern-
ing nursing personnel and of an incident report
prepared by the hospital staff. We affirm.

Hugh Gallagher was admitted to South Macomb
Hospital on October 5, 1979. At the time of his
admission, he was seventy-two years old and had a
history of multiple health problems. On October
15, he underwent surgery for a urological problem
and a catheter was inserted. He remained in the
hospital after the surgery and, on October 26, the
catheter was removed. Later that evening and into
the early hours of October 27, he experienced
physical discomfort. Sometime around 1:30 or 2:00
A.M. he was given medication to reduce his temper-
ature.

Between the hours of 2:00 and 5:00 A.M., Gal-
lagher appeared to be sleeping well and was not
awakened by the nurses making their hourly
rounds. At 5:30 A.M. a nurse found Gallagher
sitting on the floor at the foot of his hospital bed.
He appeared confused and was mumbling incoher-

* Former Court of Appeals judge, sitting on the Court of Appeals by
assignment.

ently. He was placed back in bed and a restraining device was put on him. Although a doctor was called to examine Gallagher, it was not determined until later that he had fractured his hip as a result of a fall.

Subsequently, the Gallaghers filed a complaint against DMHA seeking damages in part for the hospital's negligence in failing to properly secure Gallagher to his bed by a posey jacket or other restraining device prior to his fall and failing to adequately train its staff and employ personnel experienced in the care and treatment of patients.

Prior to trial, the court granted defendant's motion to exclude from trial the hospital's internal rules and regulations concerning its nursing personnel. Plaintiff moved for immediate consideration and applied for emergency leave to appeal both in this Court and our Supreme Court. Both Courts granted the motion for immediate consideration but denied leave. The issue was raised again at trial and the court sustained the defendant's objection.

Plaintiff's first issue is whether the trial court erred in refusing to admit the internal rules and regulations. Defendant contends that plaintiff is precluded by the doctrine of law of the case from raising this issue on appeal because of the earlier denials of leave. That doctrine applies only to questions which were actually determined by the appellate court's prior decision and which were necessary to the prior decision. *Jackson Printing Co, Inc v Mitan,* 169 Mich App 334, 338-339; 425 NW2d 791 (1988). The previous determinations in this case did not rule upon the merits and therefore, having no precedential value, do not preclude our present review. *Jackson, supra.*

Regarding the merits of this issue, the principle that an institution's internal rules and regulations

do not add to its obligations to the public or establish a standard of care was first set forth in Michigan in *McKernan v Detroit C S R Co,* 138 Mich 519; 101 NW 812 (1904). *McKernan* involved a negligence action in which a fireman was injured in a collision between a trolley car and a fire truck. At trial, the injured fireman sought to establish that the trolley operator had been travelling at a speed in violation of the defendant's own internal rules. Our Supreme Court refused to allow the railway's internal rules as evidence of the trolley operator's negligence and held that the existence of the rules did not add to the railway's obligation to the public. *Id.,* p 524. The concurring opinion expanded upon this principle, explaining that the law regulates "by rules which do not depend upon the existence or nonexistence of corporate regulations. It neither permits corporations to legislate away their responsibilities by rules, nor imposes discriminating liabilities upon them by reason of their efforts to lessen public danger." *Id.,* p 532.

This distinction between private regulations which assist in the orderly and prudent conduct of business and the law which fixes obligations and liabilities was also made in *Dixon v Grand Trunk W R Co,* 155 Mich 169, 173; 118 NW 946 (1908). In *Dixon,* the Court refused to base negligence on the railway's failure to enforce its own rule. *Id.,* p 174.

More recently this Court relied on *Dixon in Wilson v W A Foote Memorial Hospital,* 91 Mich App 90, 95; 284 NW2d 126 (1979), when it stated in dictum that the internal rules and regulations of a hospital do not establish the applicable standard of care in malpractice actions. This position is consistent with Michigan's rule that expert testimony is required to establish the standard of care required of a hospital unless the lack of

professional care is so manifest that the ordinary layman would recognize it. *Sullivan v Russell,* 417 Mich 398, 407; 338 NW2d 181 (1983); *Wilson v Stilwill,* 411 Mich 587, 611; 309 NW2d 898 (1981). Similarly, where the question is one of medical judgment, expert testimony is required to establish the applicable standard. *Wilson, supra,* p 611. In general, the standard required of physicians and nurses is that they possess and carefully apply such skill and learning as are ordinarily possessed by practitioners in their community. See *Jones v Porretta,* 428 Mich 132, 144-145; 405 NW2d 863 (1987); Anno, *Nurse's liability for her own negligence or malpractice,* 51 ALR2d 970. It is not established by internal, administrative rules. Under the above standards, the court did not err in refusing to admit the hospital's nursing manual or internal rules.

Plaintiff questions the validity of *Dixon* and *Foote* by referring us to *Davis v Detroit,* 149 Mich App 249; 386 NW2d 169 (1986), lv den 426 Mich 856 (1986), and *Young v Ann Arbor (On Remand),* 147 Mich App 333; 382 NW2d 785 (1985), lv den 425 Mich 862 (1986). In both *Davis* and *Young,* persons who were arrested hanged themselves in their detention cells. In both cases, this Court held that the Department of Corrections' rules governing the practice and conditions of jails and the defendants' failure to comply with them could be used as evidence of negligence at trial. *Davis, supra,* p 257; see *Young v Ann Arbor,* 119 Mich App 512, 517-518; 326 NW2d 547 (1982). In both instances, compliance with the department's rule was mandated by statute. Similarly, a violation of a regulation promulgated pursuant to statutory authority is admissible in a medical malpractice action, *Kakligian v Henry Ford Hospital,* 48 Mich

App 325; 210 NW2d 463 (1973). That is not the case here.

Here, the provisions in the hospital's nursing manual appear to be more in the nature of guidelines for the day-to-day operations of that hospital. The record does not suggest that compliance with these internal rules and regulations was mandated by law as in *Davis* or *Young*.

Plaintiff also suggests that the manual should have been admitted under *Owens v Allis-Chalmers Corp,* 414 Mich 413, 422-423; 326 NW2d 372 (1982). However, the record does not indicate that the manual was indicative of relevant industry standards or customary usage and practice and therefore *Owens* is not controlling.

Plaintiff has also referred us to decisions in other jurisdictions in which courts found hospital policy relevant to determining the standard of care. The most potentially persuasive reasoning appears in *Darling v Charleston Community Memorial Hospital,* 33 Ill 2d 326; 211 NE2d 253 (1965). However, in *Darling,* the court was not ruling on the admissibility of a hospital manual, but on regulations, industry accreditation standards and the hospital's bylaws as being relevant to establishing the standard of care. Neither the content of these materials nor their relevancy is discussed in the opinion. Conceivably, a hospital's rules could be admissible as reflecting the community's standard where they were adopted by the relevant medical staff and where there is a causal relationship between the violation of the rule and the injury. *Boland v Garber,* 257 NW2d 384 (Minn, 1977). That is not the case here.

Plaintiff sought to introduce internal rules concerning restraint of patients, charting of observations and monitoring changes in behavior. But the question at trial was whether Gallagher had re-

ceived adequate nursing care or, in other words, whether the nurses had exercised appropriate medical judgment. The rules plaintiff sought to use were not standards for exercising judgment but were more in the nature of the hospital's administrative guidelines. As such, they were not indicative of community standards nor do they appear to be causally connected to the injury.

As noted in *Darling, supra,* the ultimate question is what responsibility has the hospital assumed regarding the care of the patient. In Michigan, we look to the standard practiced in the community rather than internal rules and regulations to determine that responsibility in a malpractice action. Given the facts of this case, we do not find plaintiff's arguments so compelling as to require deviation from the rule set forth in *McKernan* and *Dixon.*

Plaintiff's second issue is that the trial court erred in refusing to permit plaintiff to introduce an incident report prepared at the time of Gallagher's fall.

Pursuant to the Public Health Code, MCL 333.1101 *et seq.*; MSA 14.15(1101) *et seq.*, hospitals are required to review their professional practices and procedures to improve the quality of patient care and reduce morbidity and mortality. *Attorney General v Bruce,* 422 Mich 157, 161; 369 NW2d 826 (1985). To achieve this end, the Legislature has exempted from court subpoena information and records compiled in furtherance of improving health care and reducing morbidity and mortality. *Id.* See also MCL 333.20175(5); MSA 14.15(20175)(5) and MCL 333.21515; MSA 14.15(21515).

This privilege may only be invoked for records, data and knowledge collected for or by an individual or committee assigned a review function. *Marchand v Henry Ford Hospital,* 398 Mich 163,

167; 247 NW2d 280 (1976). In determining whether the information or record is privileged, the court should consider the hospital's bylaws, internal rules and regulations and whether the committee's function is that of retrospective review for purposes of improvement and self-analysis and thereby protected, or part of current patient care. *Monty v Warren Hospital Corp,* 422 Mich 138, 147; 366 NW2d 198 (1985).

Although the hospital's bylaws and internal rules and regulations concerning incident reports were not included on appeal, it appears from the testimony of Sara Thompson, the hospital's assistant administrator of legal affairs, that the incident report was prepared for purposes consistent with MCL 333.20175(5); MSA 14.15(20175)(5) and MCL 333.21515; MSA 14.15(21515). Thompson explained that an incident report is completed for all unusual occurences at the hospital and that its purpose was to assist the hospital in monitoring its own activities to reduce accidents, injuries, morbidity and mortality at the hospital. The report is routed to the unit supervisor and the department head for further review and investigation and then to the hospital's legal affairs department. It is tabulated with other reports to identify trends, patterns or problems at South Macomb Hospital. The information is then routed to either the hospital's Safety Committee or Quality Assurance Committee. Both committees are assigned the responsibility of identifying trends or problems at the hospital. Based on Thompson's testimony, the quality and safety committees appear to fulfill the protected review functions.

Plaintiff argues that Thompson's testimony at the evidentiary hearing failed to demonstrate that the report was privileged because she had no firsthand knowledge of the manner in which the

hospital's incident reports were processed at the time of Gallagher's fall in 1979. That Thompson's employment with DMHA began in 1982 and that she lacked personal knowledge of Gallagher's incident report did not render the report any less confidential or privileged under the statute. The uncontested testimony was that the same written review procedure was in effect at the time of the fall.

Further, our review of the incident report indicates that it provides minimal information, which was elicited from other sources during the trial. Even assuming that it was error not to admit the report, it would have been harmless error not requiring reversal. *Vergote v K mart Corp (After Remand),* 158 Mich App 96, 109; 404 NW2d 711 (1987).

Affirmed.