CARLTON, J.,
dissenting:
¶ 66. Finding that the evidence lacks proof of medical causation, I respectfully dissent from the majority’s opinion as I would reverse and render.[5] Further, the trial judge committed reversible error by improperly instructing the jury on the law. Alternatively, at the very least, I would reverse the final judgment and remand this case for a new trial on the merits in light of the error in the jury instructions.
¶ 67. Physicians bear the duty to ascertain the proper medical history of a patient and the responsibility to confirm any medical history taken for him by another medical provider under his supervision, or taken under his authority to fulfill his or her treatment responsibilities. See generally Hall v. Hilbun, 466 So.2d 856, 871 (Miss.1985) (superseded by statute).[6] This duty goes to the core of the error in the jury instructions and the sufficiency of the evidence of negligence in the present case. I submit that the evidence presented in this medical-malpractice case at trial must first establish that a duty was owed to the patient and by whom the duty was owed. The evidence must show that such duty was breached, and the jury must be properly instructed as to whom the duty belonged.
¶ 68. The duty to ascertain an accurate patient history constitutes a non-delegable duty of the treating physician. The physician must confirm the patient’s medical history collected for his treatment, and the physician may not escape liability or the responsibilities of this medical duty by delegating the duty to ascertain and confirm an accurate medical history to a medical provider collecting such history for him. The record shows that Debra Priester, a nurse at Baptist, conducted Ellen Kelly’s pre-operative admission history and assessment on July 3, 2000, a week prior to Ellen’s admission into the hospital for surgery. Nurse Priester prepared the Pre-Procedure/Surgery Check List and listed Ellen’s allergies as sulfa, Lorcet, dairy products, seafood, and adhesive tape. On the Nursing Admission History and Assessment form, Ellen’s allergies were listed as sulfa, Lorcet, all dairy products and seafood, and adhesive on band-aids. The section on this form entitled, “Latex Allergy Alert,” listed several questions related to latex allergies inquiring as to whether the patient possessed a known allergy to latex or possessed an allergy to three items indicating a potential latex allergy to wit: avocados, bananas, or chestnuts. The form reflected that Ellen possessed an allergy to chestnuts. However, Nurse Priester failed to notify the treating physicians, Dr. Fred Ingram and Dr. Doug Odom, that Ellen responded yes to an allergy to chestnuts. This constitutes the crux of Jonathan Kelly’s case of negligence. However, even if Nurse Priester failed to notify Dr. Ingram and Dr. Odom as to Ellen’s allergy to chestnuts, the treating physicians possessed a non-dele- *787 gable duty to confirm Ellen’s medical history. I submit that if the treating physicians had reviewed Ellen’s medical history obtained by the hospital which showed a known allergy to chestnuts, an apparent indicator of potential latex allergy, then they would have possessed a duty to confirm the medical history with Ellen to ascertain an accurate history. In this case, the failure of Nurse Priester to take the extra precaution fails to constitute medical causation since the treating physicians, Dr. Ingram and. Dr. Odom, did not review or rely on the medical history obtained by Nurse Priester for the hospital.
¶ 69. Regarding a physician’s non-dele-gable duty of care, the Mississippi Supreme Court has held:
In the care and treatment of each patient, each physician has a non-delegable duty to render professional services consistent with that objectively ascertained minimally acceptable level of competence he may be expected to apply given the qualifications and level of expertise he holds himself out as possessing and given the circumstances of the particular case. The professional services contemplated within this duty concern the entire caring process, including but not limited to examination, history, testing, diagnosis, course of treatment, medication, surgery, follow-up, after-care and the like.
Hall, 466 So.2d at 871.
¶70. In applying the law to the duty owed in this case, I must address the trial court’s error in instructing the jury on the law in this regard. I submit that Jury Instruction 15,[7] given by the trial court over Mississippi Baptist Medical Center’s (Baptist) objection, causes a great injustice in this case by misstating the law as to applicable duties of standard of care by allowing the jury to find liability for a violation of a hospital policy and in transferring responsibility of the physician’s non-delegable duty of treatment[8] to a nurse. While I agree that nurses certainly should notify the treating physician of any potential risks or indications raised by the medical history provided by the patient, I submit that the treating physician bears the ultimate responsibility to confirm the medical history with the patient and may not transfer this responsibility to the nurse that took the patient’s medical history.[9] I will now turn to the application of these duties to the evidence in this case.
¶ 71. Two glaring deficiencies compel me to conclude that the evidence lacks *788 proof of medical causation. First, the evidence shows that even if the nurses at the hospital were negligent in assessing the patient’s medical history, the treating physicians, Dr. Ingram and Dr. Odom, did not review or use the medical history obtained by Nurse Priester.[10] Instead, these physicians used Ellen’s medical history from their own clinical practice and their past physician-patient relationship with Ellen. Second, with respect to the physical cause of death, I find the record in this case fails to show physical medical evidence that supports expert opinion that Ellen suffered an anaphylactic reaction resulting from an allergy to latex. I will briefly explain these two identified deficiencies separately.
¶ 72. With respect to the deficiency in medical causation pertaining to the nurse’s negligence, the nurses employed by Baptist gave the physicians Ellen’s complete medical records, including information that Jonathan Kelly’s experts contended should have alerted them to the possibility of a latex allergy. However, the treating physicians, Dr. Ingram and Dr. Odom, did not review the records provided by Baptist; instead, they relied on their own clinical history with Ellen, as well as their lengthy physician-patient experience with Ellen. Both Dr. Ingram and Dr. Odom testified that Ellen possessed no latex allergy, and they ordered no latex precautions.[11] Therefore, any negligence by the nurses at Baptist in taking Ellen’s medical history could not have proximately caused her tragic death. Also relevant to the issue of causation, the trial court erred by instructing the jury that Baptist could be held liable solely on a finding that the nurses violated the internal hospital policy because of the intervening issue that both Dr. Ingram and Dr. Odom did not review Ellen’s medical histories taken by the hospital and also because the internal hospital policy fails to define the applicable standard of care.[12]
¶ 73. Second, the only symptom that Ellen exhibited that indicated a potential allergic reaction to latex was itching. All of the other physical findings and tests measuring Ellen’s various body gas levels, sodium serum levels, oxygen levels, air way or broncho-constriction, and other physical conditions, as set forth in the record, fail to support the existence of an allergic reaction rising to the level of an anaphylactic reaction as Ellen’s cause of death. Certainly a jury can choose between experts, but the then-existing medical test results and physical medical condi *789 tions remain the same. While experts may battle on the interpretation of those various results and conditions, their interpretations must be supported by some evidence.[13]
¶74. Instead, the record shows that Ellen experienced cardiac arrest, a good oxygen level, no wheezing, and no evidence of blueness in her nail beds. She did, however, show other signs including an alarming bicarbonate level. Defense experts testified as to their interpretation of the physical findings and indicators arising from test results of Ellen’s bodily functions, tissues, levels, and gases. The defense experts testified that the bicarbonate level affects the heart’s ability to work properly, and the experts testified that the brain swelling was due to a rapid drop in serum sodium levels. The defense experts further testified that Ellen’s brain swelling caused her brain to push downward on the swollen brain tissue, which impinged the functions of the brain that control respiration, causing Ellen to stop breathing. Whether Ellen’s tragic death resulted from such ultimate cause lies beyond the scope of.this Court’s appellate review, except to opine that such interpretation is supported by the evidence, whereas the testimony that her tragic death resulted from an anaphylactic reaction to latex is not supported by the physical medical evidence in this case.
¶ 75. Based on the foregoing reasons, I dissent.

. See generally Estate of Finley ex rel. Jordan v. Beverly Health and Rehab. Servs., Inc., 933 So.2d 1026, 1036-37 (¶¶ 34-36) (Miss.Ct.App.2006) (discussing the need for evidence supporting causation).

. See also Sacks v. Necaise, 991 So.2d 615, 619 (¶ 9) (Miss.Ct.App.2007) ("If a doctor chooses to allow a nurse to perform a non-delegable duty, the doctor must accept responsibility if that duty is breached.”) (citation omitted).

.Jury Instruction 15 provides:
If you find from a preponderance of the evidence in this case that on July 3, 2000, and on July 10-14, 2000, the nursing personnel at Mississippi Baptist Medical Center:
(1) failed to properly assess or identify Ellen Kelly as at risk for latex allergy or sensitivity, if any, and/or
(2) failed to properly inform the treating physicians that Ellen Kelly was at risk for latex allergy, if any, and/or
(3) failed to implement the Mississippi Baptist Medical Center's Policies and Procedures in regard to latex allergies or sensitivity, if any [sic]
And if you further find that said failure or failures, if any, constituted negligence as that term is defined elsewhere in these instructions; and that this negligence, if any, caused, or contributed to cause, injury or damage to Ellen Kelly and her eventual death, then you should return a verdict in favor of the Kelly Family against [the][d]e-fendant[][,] Mississippi Baptist Health Systems, Inc. [d/b/a] Mississippi Baptist Medical Center[.]

. See Hall, 466 So.2d at 871.

. See generally Ekornes-Duncan v. Rankin Med. Ctr., 808 So.2d 955, 959 (¶ 10) (Miss.2002) (A nurse’s failure to communicate signs of ruptured aorta failed to lead to liability where physician already conducted initial assessment.).

. See also Wyeth Labs., Inc. v. Fortenberry, 530 So.2d 688, 691 (Miss.1988) (finding a lack of causation even if warning in package was insufficient).

. Dr. Carroll McLeod, the anesthesiologist who treated Ellen at Baptist during her surgery, took her own clinical history of Ellen which showed the same type of information found in the hospital records, and Dr. McLeod also ordered no latex precautions. Other treating physicians testified that Ellen did not die from a reaction to latex.

. See Quijano v. United States, 325 F.3d 564, 568 (5th Cir.2003) ("In Texas, a hospital’s internal policies and bylaws may be evidence of the standard of care, but hospital rules alone do not determine the governing standard of care.") (citations omitted); Gallagher v. Detroit-Macomb Hosp. Ass’n., 171 Mich. App. 761, 431 N.W.2d 90, 92 (1988) (finding that an institution’s internal rules and regulations do not establish a standard of care); Darling v. Charleston Cmty. Mem'l Hosp., 33 I11.2d 326, 211 N.E.2d 253, 257 (1965) (explaining that hospital rules and bylaws may be admissible but do not conclusively establish the standard of care). See generally 57A Am. Jur. 2d Negligence § 174 (2004) ("The failure to comply with a company rule does not constitute negligence per se; the jury may consider the rule, but the policy does not set forth a standard of conduct that establishes what the law requires of a reasonable person under the circumstances.”).

. See M.R.E. 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data....”). See also Univ. of Miss. Med. Ctr. v. Pounders, 970 So.2d 141, 146-47 (¶¶ 20-22) (Miss.2007).