# STATE OF MICHIGAN

# COURT OF APPEALS

JORDAN MELICK, Personal Representative of
the Estate of ROBERT LOUIS MELICK,
Deceased,

    Plaintiff-Appellee,

v

WILLIAM BEAUMONT HOSPITAL, doing
business as BEAUMONT HOSPITAL, GROSSE
POINTE,

    Defendant-Appellant.

UNPUBLISHED
April 16, 2015

No.  319495
Wayne Circuit Court
LC No.  13-000193-NH

Before:  HOEKSTRA, P.J., and MARKEY and DONOFRIO, JJ.

PER CURIAM.

Defendant appeals by leave granted an order compelling it to produce certain internal
hospital policies and procedures.  Because this information was irrelevant to resolution of the
medical malpractice claims at issue in this case and not reasonably calculated to lead to the
discovery of admissible evidence, we reverse the trial court's discovery order and remand for
further proceedings.

According to plaintiff's complaint, on August 25, 2011, Robert Melick, who had
previously suffered a stroke, was admitted to William Beaumont Hospital.  The nursing staff at
the hospital assigned Melick a fall risk assessment score of eight.  The following day, on August
26, 2011, a respiratory therapist found Melick on the floor; he had apparently fallen out of his
bed.  A subsequent CT scan revealed an acute subarachnoid hemorrhage, which was attributed to
left frontal trauma.  On August 27, 2011, after Melick's fall, a physician wrote an order for a
sitter to remain at Melick's beside.  Melick remained in the hospital until September 12, 2011, at
which time he was discharged to a rehabilitation facility where he remained for about five weeks
before returning to his home.  He died on October 22, 2012, and the cause of his death was
respiratory failure secondary to possible aspiration pneumonia and a cerebral vascular accident.

Plaintiff filed the present medical malpractice lawsuit on January 4, 2013.  Specifically,
the complaint alleged that defendant was vicariously liable for the negligence of its nurses who
purportedly breached their standard of care by:  (1) failing to ensure that the bed rails on
Melick's bed were in the appropriate position, (2) failing to utilize a bed alarm, (3) failing to

-1-

request and independently initiate an order for a sitter, and (4) failing to inform Melick's family that they had the option of remaining with Melick to act as a sitter. Relevant to the present appeal, following a discovery request by plaintiff, and over objection from defendant, the trial court ordered defendant to produce internal policies and procedures in effect at the time of Melick's fall that related to fall precautions at the hospital, including specifically the use of bedrails, bed alarms, and sitters. Defendant now appeals by leave granted to challenge the trial court's discovery order.[1]

On appeal, defendant contends that the trial court abused its discretion when it granted plaintiff's motion to compel production of internal hospital policies and procedures. Specifically, defendant maintains that this information is irrelevant to plaintiff's malpractice claim because the standard of care is dictated, not by internal policies and procedures, but by the standard of care accepted in the medical community, which must be established by expert testimony. Thus, according to defendant, internal hospital policies and procedures are inadmissible and, because the discovery of the information in question is not reasonably calculated to lead to admissible evidence, the trial court abused its discretion by ordering production of these policies and procedures.

A trial court's ruling on a motion to compel discovery is reviewed for an abuse of discretion. *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*. at 442. To the extent this issue involves consideration of the court rules, "[t]he interpretation and application of the court rules, like the interpretation of statutes, is a question of law that is reviewed de novo on appeal." *Colista v Thomas*, 241 Mich App 529, 535; 616 NW2d 249 (2000).

The scope of discovery in Michigan is governed by MCR 2.302(B)(1). See *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 535; 854 NW2d 152 (2014) (citation omitted). This provision states:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of another party, including the existence, description, nature, custody, condition, and location of books, documents, or other tangible things, or electronically stored information and the identity and location of persons having knowledge of a discoverable matter. It is not ground for objection that the information sought

---

[1] Contrary to plaintiff's assertion that this Court lacks jurisdiction in this case, defendant is an "aggrieved party" because, as a result of the trial court's order, defendant is being compelled, over its objections, to provide plaintiff with its internal policies and procedures. In other words, the trial court's order resulted in defendant suffering a concrete and particularized injury. See *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291-292; 715 NW2d 846 (2006). Consequently, defendant has standing to appeal and we have jurisdiction. See generally *Manuel v Gill*, 481 Mich 637, 643; 753 NW2d 48 (2008); Const. 1963, art 6, § 10; MCR 7.203(B).

will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. [MCR 2.302(B)(1).]

As this rule makes plain, Michigan follows "a liberal discovery policy that permits the discovery of any matter, not privileged, that is relevant to the subject matter involved in the pending case." *Hamed v Wayne Co*, 271 Mich App 106, 109; 719 NW2d 612 (2006). Indeed, Michigan has a "strong historical commitment to a far-reaching, open, and effective discovery practice." *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 36; 594 NW2d 455 (1999). The purpose of this broad discovery "is to simplify and clarify the contested issues, which is necessarily accomplished by the open discovery of all relevant facts and circumstances related to the controversy." *Hamed*, 271 Mich App at 109.

Although Michigan employs a broad discovery policy, reasonable limits have been placed on discovery. *Alberto v Toyota Motor Corp*, 289 Mich App 328, 336; 796 NW2d 490 (2010). Specifically, as written, the court rules "ensure that discovery requests are fair and legitimate by providing that discovery may be circumscribed to prevent excessive, abusive, irrelevant, or unduly burdensome requests." *Hamed*, 271 Mich App at 110, citing MCR 2.302(C). See also *Cabrera v Ekema*, 265 Mich App 402, 407; 695 NW2d 78 (2005). Moreover, Michigan's commitment to open and far-reaching discovery does not allow a party to use discovery as a "fishing expedition," which can occur when discovery is permitted on the basis of conjecture. *Augustine v Allstate Ins Co*, 292 Mich App 408, 419-420; 807 NW2d 77 (2011) (citation omitted).

In this case, we begin our analysis of plaintiff's discovery request by considering whether internal hospital policy and procedures regarding fall precautions are relevant to the claims and defenses at issue in this case. See MCR 2.302(B)(1); *Davis v O'Brien*, 152 Mich App 495, 505; 393 NW2d 914 (1986) ("To be discoverable, documents must be relevant."). In particular, in cases of medical malpractice, a hospital may be held directly liable for malpractice based on its negligence in hiring, retaining and supervising staff, or a hospital may be held vicariously liable for the negligence of its agents. *Cox v Bd of Hosp Managers for City of Flint*, 467 Mich 1, 11; 651 NW2d 356 (2002). In this case, plaintiff's complaint involves only allegations of vicarious liability, while, in contrast, plaintiff has not advanced any claims of direct negligence against defendant. Specifically, as noted, plaintiff's claims that defendant is vicarious liable for the acts of its nurses insofar as the nurses were negligent because they (1) failed to ensure that the bed rails on Melick's bed were in the appropriate position, (2) failed to utilize a bed alarm, (3) failed to request and independently initiate an order for a sitter, and (4) failed to inform Melick's family of the option of remaining with Melick to act as a sitter. The issue before us then is whether the hospital's internal policy and procedures are relevant to claims or defenses relating to defendant's potential vicarious liability arising from the acts and omissions of its nurses.

By definition, vicarious liability involves "direct responsibility imposed by operation of law." *Id.* (citation omitted). Under this theory of liability, "the hospital stands in the shoes of its agents," and is "held to have done what the agent has done." *Nippa v Botsford Gen Hosp*, 257 Mich App 387, 391; 668 NW2d 628 (2003). Thus, to hold a hospital vicariously liable, a plaintiff must establish the negligence of at least one of the hospital's agents, which requires plaintiff to prove: (1) the applicable standard of care, (2) a breach of that standard, (3) injury, and (4) proximate causation between the alleged breach and the injury. *Cox*, 467 Mich at 12.

-3-

Relevant to this case, the standard of care applicable to nurses is "the skill and care ordinarily possessed and exercised by practitioners of the profession in the same or similar localities." *Id.* at 21-22. In other words, the standard of care is determined by the standard of practice in the community. *Decker v Rochowiak*, 287 Mich App 666, 686; 791 NW2d 507 (2010). Because it is the standard practice in the community which dictates the standard of care, internal rules and regulations do not determine liability in a malpractice action, and such materials may not be admitted at trial. *Zdrojewski v Murphy*, 254 Mich App 50, 62; 657 NW2d 721 (2002); *Gallagher v Detroit-Macomb Hosp Ass'n*, 171 Mich App 761, 768; 431 NW2d 90 (1988). Rather, the standard of care and a breach thereof must be established by expert testimony. *Kalaj v Khan*, 295 Mich App 420, 429; 820 NW2d 223 (2012); *Decker*, 287 Mich App at 686. In this case, the principles relevant to determining a nurse's standard of care apply equally to defendant because, in cases involving vicarious liability, the standard of care applicable to the hospital is the same standard applicable to its agents identified in the complaint. *Nippa*, 257 Mich App at 391.

Given that internal rules and regulations do not establish a nurse's standard of care, we fail to see how a hospital's internal policies and procedures could be construed as relevant to a determination of the hospital's vicarious liability arising from the negligence of its nurses or how such information could be reasonably calculated to lead to admissible evidence. That is, this information does not establish the standard of care, it does not show whether the nurses' conduct in question was a breach of that standard of care, it does not demonstrate whether Melick suffered injury, or whether the nurses' breach of the standard of care was the proximate cause of that injury. In short, internal policies and procedures are irrelevant to a determination of the hospital's vicarious liability arising from the negligence of its nurses.[2] Because these materials are irrelevant to the issue of defendant's vicarious liability and not reasonably calculated to lead to admissible evidence, the trial court abused its discretion by granting plaintiff's discovery request. See *Cabrera*, 265 Mich App at 407-408; MCR 2.302(B)(1).

On appeal, plaintiff recognizes that defendant's internal policies and procedures will not establish the standard of care applicable to the nurses, and thus plaintiff appears to concede that this information is not relevant to the issue of defendant's vicarious liability. Instead, plaintiff

---

[2] In dicta, in a nonbinding decision of this Court decided before November 1, 1990, see MCR 7.215(J)(1), this Court speculated that a hospital's internal rules might conceivably be relevant to establishing an actor's liability in a medical malpractice case where "they were adopted by the relevant medical staff and where there is a causal relationship between the violation of the rule and the injury." *Gallagher*, 171 Mich App at 767. See also *Jilek v Stockson*, 289 Mich App 291, 317; 796 NW2d 267 (2010) (BANDSTRA, J, dissenting), reversed by 490 Mich 961 (2011). Setting aside that the dicta in *Gallagher* does not bind this Court, plaintiff does not allege circumstances comparable to the theoretical scenario described in *Gallagher*; that is, plaintiff has not alleged that the nurses responsible for Melick's care adopted improper policies which gave rise to Melick's injuries. Rather, the issue as framed in plaintiff's complaint is whether the nurses' care and treatment of Melick satisfied the applicable standard of care. Consequently, the more general rule that internal policies are not relevant to the standard of care and breach thereof applies in this case. See *Gallagher*, 171 Mich App at 767-768.

maintains that, as in *Davis*, 152 Mich App at 505-506, the information in question may be relevant to a determination of whether defendant failed to adopt and implement appropriate policies pertaining to fall precautions. In other words, plaintiff speculates that discovery of defendant's internal policies and procedures may potentially lead to information that defendant may be held *directly* liable for its failure to develop adequate procedures and policies. As explained above, however, plaintiff's theory of liability in this case, as pled in his complaint, is one of vicarious liability, not direct liability. Given that plaintiff did not plead a claim of direct liability, it follows that information related to defendant's direct liability is not relevant to the subject matter involved with the parties' claims or defenses pending in this case and that, as such, this information is not discoverable under MCR 2.302(B)(1). To permit plaintiff to use discovery to search for information relating to claims not included in his complaint would be to allow plaintiff to engage in an impermissible fishing expedition based on nothing but the conjectural possibility that defendant might have done something to render itself directly liable. See generally *Augustine*, 292 Mich App at 419-420. Rather than use discovery as an attempt to unearth new claims, if plaintiff has reason to believe defendant directly liable for negligence, he should have included such a claim in his complaint or amended his complaint to add such a claim. See MCR 2.111(A), (B)(1); MCR 2.118. Because fishing expeditions are not permitted during discovery, the trial court abused its discretion by ordering defendant to comply with plaintiff's request for discovery of information not relevant to the claims and defenses pending in this action. See MCR 2.302(B)(1). Consequently, we reverse the trial court's order compelling defendant's compliance with plaintiff's discovery request and we remand for further proceedings consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction. Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Joel P. Hoekstra
/s/ Jane E. Markey
/s/ Pat M. Donofrio

-5-