COLISTA v THOMAS

Docket No. 208921. Submitted January 18, 2000, at Detroit. Decided June
23, 2000, at 9:10 A.M.

F. Philip Colista brought an action in the Wayne Circuit Court against
Philip J. Thomas, alleging that the defendant defamed the plaintiff
in a letter written to the liaison between the Michigan Supreme
Court and the Michigan Attorney Grievance Commission concern-
ing the plaintiff's conduct as a member of the Judicial Tenure Com-
mission. At the time that he wrote his letter, the defendant was the
Grievance Administrator for the Michigan Attorney Grievance Com-
mission. The substance of the letter was reported in a newspaper.
The defendant moved for summary disposition, claiming immunity
from suit under MCR 9.125 and that publication, as an element of
defamation, is lacking because he did not cause the newspaper to
receive the alleged defamatory letter. The court, Edward M.
Thomas, J., denied the motion. The defendant appealed by leave
granted.

   The Court of Appeals held:

   1. MCR 9.125 provides a person absolute immunity from suit for
statements and communications transmitted to the Grievance
Administrator, the grievance commission, or to commission staff
and for statements and communications given in an investigation
or proceeding on alleged misconduct or reinstatement. MCR 9.125
also provides the Grievance Administrator absolute immunity from
suit for conduct arising out of the performance of the administra-
tor's duties. The trial court did not err in denying summary disposi-
tion based on the defendant's claim of immunity in light of issues
of fact concerning whether the defendant's letter constitutes state-
ments made in an investigation of alleged attorney misconduct and
whether the defendant was engaged in conduct arising out of the
performance of his duties as Grievance Administrator.

   2. The trial court did not err in denying summary disposition
based on the defendant's claim that publication of the alleged
defamatory letter cannot be shown. Publication can be established
with the defendant's submission of the letter to the liaison between
the Supreme Court and the Attorney Grievance Commission.

   Affirmed.

1. LIBEL AND SLANDER — ATTORNEY GRIEVANCES — IMMUNITY.

    A person who makes statements and communications transmitted to the Attorney Grievance Commission, the Grievance Administrator, or commission staff, or who makes statements and communications in an investigation or proceeding on alleged misconduct or reinstatement, is absolutely immune from suit for such statements; the Grievance Administrator, legal counsel, investigators, members of hearing panels, the commission, the Attorney Discipline Board, and their staffs are absolutely immune from suit for conduct arising out of the performance of their duties (MCR 9.125).

2. LIBEL AND SLANDER — PRIMA FACIE CASE

    A plaintiff, in order to make a prima facie case of defamation, must show that the defendant made a false and defamatory statement concerning the plaintiff, that the defendant published the defamatory statement to a third party, that the defendant was at least negligent in publishing the statement, and either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication (defamation per quod).

*Bellanca, Beattie and De Lisle, P.C.* (by *Frank D. Eaman* and *Lawrence J. Paolucci*), for the plaintiff.

*Robert E. Edick* and *Richard L. Cunningham*, for the defendant.

Before: BANDSTRA, C.J., and HOLBROOK, JR., and FITZGERALD, JJ.

BANDSTRA, C.J. Defendant appeals by leave granted the trial court's order denying summary disposition of plaintiff's defamation suit. We affirm.

    This case arises from a letter that was written by defendant on October 7, 1996, to Michigan Supreme Court Commissioner Glen B. Gronseth. At the time the letter was written, defendant was the Grievance Administrator for the Michigan Attorney Grievance Commission. Gronseth served as liaison between the Supreme Court and the Attorney Grievance Commission. Plaintiff was a member of the Judicial Tenure

Commission (JTC). The letter, written under the letter-head of the Attorney Grievance Commission, pur-ported to contain information given to defendant regarding instances of misconduct by the JTC and its staff. The letter referenced the following allegations by JTC staff: (1) plaintiff was responsible in part for former JTC director Joseph F. Regnier's resignation, (2) plaintiff had used his position on the JTC for his personal benefit, (3) another JTC staff member had engaged in racial intimidation and harassment of members of the commission's support staff, and (4) plaintiff blocked discipline of that staff member and may have engaged in such intimidation and harass-ment himself. The letter also stated that JTC staff members had photocopied sensitive documents that may demonstrate that plaintiff engaged in conflicts of interest while serving on the commission out of con-cern that those documents would be destroyed. More-over, defendant questioned JTC members' motives in appointing an interim director who defendant believed was incapable of serving in that capacity.[1]

---

[1] The text of the letter was as follows:

As you are no doubt aware, Joseph F. Regnier, the former director of the Judicial Tenure Commission, resigned his position effective September 30, 1996. Although Mr. Regnier submitted a resignation concerning his employment, I have learned that he was actually ter-minated from his position and then given the option of resigning, which he accepted. As a result of the five years I spent working at the Judicial Tenure Commission, I know all current staff members of that agency and have received a considerable amount of *unin-vited* information regarding the background of Mr. Regnier's sepa-ration from that office. I have labored at great length over whether to report these matters to the Court. I have hesitated to become involved in matters that do not directly concern me, but, I now feel I have no choice, but to come forward with this information. I am concerned that unless this situation is addressed by the Court, information may begin leaking out of the Judicial Tenure Commis-sion and make its way into the media. I am also very concerned by

my current belief that the Judicial Tenure Commission's staff is currently dysfunctional and is unable to carry out that agency's important function. I am writing to inform the Court of the following.

1. I have been informed that the breakdown in the relationship between Mr. Regnier and the Judicial Tenure Commission resulted from Mr. Regnier's support of proposed court rule amendments which would have precluded F. Philip Colista, who serves on that Commission, from representing respondent attorneys in Attorney Grievance Commission proceedings. After Mr. Regnier wrote to the Court expressing support for the proposed amendments, Mr. Colista allegedly wrote Mr. Regnier a rather nasty letter concerning the subject and circulated it to all Judicial Tenure Commission Members. I believe that certain members of the Judicial Tenure Commission staff have copies of, or access to [,] the letter Mr. Colista wrote to Mr. Regnier, which apparently resulted in the total breakdown in the relationship between those two individuals. The staff of the Judicial Tenure Commission feel that Mr. Colista abused his position as a Commission Member for his own benefit. This letter, if it exists, may be leaked to the media.

2. Since leaving this office and being hired by the Judicial Tenure Commission, . . . has apparently developed a friendship with Judicial Tenure Commission Member, F. Philip Colista. I have been informed by several staff members from the Judicial Tenure Commission that . . . has provided a considerable amount of information to Mr. Colista regarding the daily comings and goings at that office. I have seen a copy of a book which . . . has allegedly kept over the last year documenting the comings and goings of Mr. Regnier and three members of the secretarial staff. There are some sort of coded entries contained in the book which reflect times when Mr. Regnier and the secretarial staff members have been away from the office, have arrived to work late, or left early. The three support staff members at the Judicial Tenure Commission are African-American and they believe that they are the subject of racial intimidation/harassment from . . . and perhaps even Mr. Colista. I have been told that . . . has made racial remarks to the secretarial staff. . . . has allegedly referred to Judicial Tenure Commission secretary . . . as "mammy" on at least one and possibly more occasions. It is alleged that although Mr. Regnier attempted to address the situation he was not able to take action against . . . due to her friendship with Mr. Colista. When I was told this information by one of the support staff members subjected to alleged racial intimidation, she was in tears.

Gronseth passed defendant's letter on to the Michigan Supreme Court Chief Commissioner. Thereafter, then Chief Justice JAMES H. BRICKLEY forwarded the letter to JTC Chairman Henry Baskin, explaining that the Supreme Court felt it necessary to bring defendant's allegations to the chairman's attention. On March 19, 1997, an article was printed in the Detroit News referencing the substance of defendant's letter to Gronseth and Chief Justice BRICKLEY's letter to the JTC. On September 30, 1997, plaintiff filed the present action, claiming that the allegations involving plaintiff referenced in defendant's letter to Gronseth were either false or cast plaintiff in a false light. Plaintiff

---

3. I believe that several members of the Judicial Tenure Commission staff who are supportive of Mr. Regnier and who feel he was improperly treated have begun copying sensitive documents which may indicate that Mr. Colista engaged in conflicts of interest while serving as a member of that agency. These employees are apparently concerned that someone with access to the materials in question may destroy them.

4. On Tuesday, October 1, 1996, the Judicial Tenure Commission appointed staff counsel . . . to act as interim director, until a decision is made on a permanent replacement for Mr. Regnier. I worked with . . . for five years. . . . has been on staff at the Judicial Tenure Commission for two decades and to my knowledge has never been entrusted with more than a routine file to investigate. . . . has never been assigned a file that proceeded to any type of litigation since being at that office. I personally believe that . . . is incapable of dealing with people in a one on one situation or with any type of excitement or stress and is incapable of functioning as the director of that agency. Several members of the Judicial Tenure Commission staff feel that someone such as . . . was appointed to this important position so that he will not be able to take a definitive stand against or regarding the Commission in the coming months. Whether that is true or not, I do not know. However, I do know that . . . is not capable of running that office on a day to day basis.

I strongly urge that the Court consider evaluating this situation.

alleged that defendant's publication of the falsities to Gronseth, the Justices of the Supreme Court, and the press damaged his reputation.

Defendant moved for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10), contending that he was immune from suit under MCR 9.125, that he did not publish the letter to any newspaper, and that plaintiff, a public official, had failed to allege any facts showing actual malice.[2] The trial court denied defendant's motion for summary disposition, concluding that there were issues of fact concerning (1) whether defendant wrote the letter in the course of his duties and (2) whether defendant caused the letter to be sent to the newspaper.

Defendant argues that the trial court erred in denying summary disposition pursuant to MCR 2.116(C)(7) because he is absolutely immune from suit under the circumstances of the present case pursuant to MCR 9.125. We disagree. This Court recently discussed summary disposition based on a claim of statutory immunity:

> On appeal, a trial court's grant of summary disposition is reviewed de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Specifically, a court's interpretation of a statute is reviewed de novo on appeal. *Stabley v Huron-Clinton Metropolitan Park Authority*, 228 Mich App 363, 366; 579 NW2d 374 (1998). When a motion for summary disposition is premised on MCR 2.116(C)(7), the nonmovant's well-pleaded allegations must be accepted as true and construed in the nonmovant's favor and the motion should not be granted unless no factual development could provide a basis for recovery. *Stabley, supra* at

---

[2] Although defendant argued that plaintiff (1) was a public figure and (2) had failed to allege facts showing actual malice, he does not raise either issue on appeal.

365; *Dewey v Tabor*, 226 Mich App 189, 192; 572 NW2d 715 (1997). "[T]he court must consider not only the pleadings, but also any affidavits, depositions, admissions, or documentary evidence that has been filed or submitted by the parties." *Horace v City of Pontiac*, 456 Mich 744, 749; 575 NW2d 762 (1998). If no facts are in dispute, whether the claim is statutorily barred is a question of law. *Dewey, supra* at 192. [*Amburgey v Sauder*, 238 Mich App 228, 231; 605 NW2d 84 (1999).]

In contrast to the defendant in *Amburgey*, whose claim of immunity was rooted in a statute, defendant in the present case bases his claim of immunity on a court rule, MCR 9.125. However, the rules governing the interpretation of statutes apply with equal force to the interpretation of court rules. *McAuley v General Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998). The interpretation and application of the court rules, like the interpretation of statutes, is a question of law that is reviewed de novo on appeal. *Id.*; *Szymanski v Brown*, 221 Mich App 423, 433; 562 NW2d 212 (1997).

MCR 9.125 provides:

A person is absolutely immune from suit for statements and communications transmitted solely to the administrator, the commission, or the commission staff, or given in an investigation or proceeding on alleged misconduct or reinstatement. The administrator, legal counsel, investigators, members of hearing panels, the commission, the board, and their staffs are absolutely immune from suit for conduct arising out of the performance of their duties.

The rule provides immunity to two classes of persons associated with the Attorney Grievance Commission: (1) persons giving statements and communications (a) transmitted to the grievance commission or

administrator or (b) given in an investigation or pro-
ceeding; and (2) the administrator and others
involved in the grievance process for. conduct arising
out of the performance of their duties. Defendant
claims that he is entitled to absolute immunity as a
member of both classes because his letter to Gron-
seth was a communication "given in an investigation
or proceeding on alleged misconduct" and because
his reporting of the plaintiff's conduct to the Supreme
Court was "conduct arising out of the performance of
[his] duties" as Attorney Grievance Administrator. We
disagree.

First, we cannot conclude that defendant is
immune from suit because his letter constitutes state-
ments made in an investigation on alleged miscon-
duct. In interpreting a rule, this Court must read its
language in the context of the entire rule in order to
produce an harmonious whole. *Frank v William A
Kibbe & Associates, Inc*, 208 Mich App 346, 354; 527
NW2d 82 (1995). MCR 9.125 is part of Chapter 9 of
the court rules, which provides the procedure for
attorney grievance proceedings. Although MCR 9.125
does not provide definitions of its terms, MCR 9.101
provides definitions of terms used in Chapter 9. MCR
9.101(12) defines "investigation" as "fact finding on
alleged misconduct under the administrator's direc-
tion." The term "grievance" is defined as alleged mis-
conduct. MCR 9.101(11). Clearly, the reference in
MCR 9.125 to statements made in an investigation ref-
ers to fact finding on attorney grievances, not to all
statements made to any tribunal. In the present case,
defendant wrote the following: "I have hesitated to
become involved in matters that do not directly con-
cern me, but, I now feel I have no choice, but to

come forward with this information." (Punctuation in original). Given that defendant himself admitted that the allegations did not directly concern him, we must conclude that there is, at the very least, a factual issue regarding whether defendant's statements were made in the course of investigating an attorney grievance.

Second, defendant's purpose in writing the letter is not clear. While much of the letter focuses on alleged improper conduct by plaintiff, the letter also focused on another JTC staff member's racial intimidation and harassment of other employees, the effect of the interim director's appointment, and the overall ability of the JTC to function under the circumstances. The JTC is a constitutional entity, Const 1963, art 6, § 30, over which the Attorney Grievance Administrator is given no authority. Consequently, it cannot be said as a matter of law that defendant was engaging in conduct arising out of the performance of his duties as Grievance Administrator. Thus, we cannot conclude that defendant was entitled to summary disposition on the basis of MCR 9.125 immunity.

Further, we reject defendant's claim that summary disposition should have been granted under MCR 2.116(C)(10) because there is no genuine issue of material fact with respect to the elements of the defamation claim. A motion under MCR 2.116(C)(10) tests whether there is factual support for a claim. *Spiek, supra* at 337; *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993). Generally, a motion for summary disposition under MCR 2.116(C)(10) is premature when discovery on a disputed issue has not been completed. *State Treasurer v Sheko*, 218 Mich App 185, 190; 553 NW2d 654 (1996). However, summary

disposition before the close of discovery is appropriate if there is no reasonable chance that further discovery will result in factual support for the nonmoving party. *Id.*

Defendant contends that further discovery would be an unnecessary waste of resources to uncover support for plaintiff's claim that defendant published the letter to the press. In order to make a prima facie case of defamation, a plaintiff must show (1) that the defendant made a false and defamatory statement concerning the plaintiff, (2) that the defendant published the defamatory statement to a third party, (3) that the defendant was at least negligent in publishing the statement, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication (defamation per quod). *Ireland v Edwards*, 230 Mich App 607, 614-615; 584 NW2d 632 (1998). However, if the party claiming defamation is a public figure, the party must show that the statements were made with actual malice. *Id.* at 615.

Defendant in the present case contends that there is no dispute of fact regarding whether he caused the newspaper to receive a copy of the letter, thus defeating the element of publication. However, the allegation that defendant published the letter to the press is only one of the claims concerning publication. Plaintiff also alleged that defendant published the letter to the Supreme Court. The element of publication requires only that the statement must be published to a third party; it does not require that the statement go to the media. See *DeFlaviis v Lord & Taylor, Inc*, 223 Mich App 432, 444; 566 NW2d 661 (1997) (defamation action would lie when alleged defamatory statements

were made to prospective employer). When defendant sent the letter to Gronseth, the element of publication was satisfied. The trial court correctly denied summary disposition. *State Treasurer, supra* at 190.[3]

We affirm.

---

[3] Defendant argues only that the element of publication was not satisfied. He does not argue on appeal, and we do not address, whether an issue of fact exists with respect to the remaining elements. See *Lawrence v Will Darrah & Associates, Inc*, 445 Mich 1, 4, n 2; 516 NW2d 43 (1994) (issues not raised on appeal may be construed as waived). Further, our holding is based solely on the current state of the record and the current procedural posture of this case. Nothing in this Court's opinion should be read to preclude a motion for summary disposition either following discovery or if it becomes clear that further discovery will not uncover factual support for plaintiff's position. *Dep't of Social Services v Aetna Casualty & Surety Co*, 177 Mich App 440, 446; 443 NW2d 420 (1989).