*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS WALKER,

       Plaintiff-Appellee,

v

WILLIE MAXWELL, also known as FETTY
WAP,

       Defendant-Appellant.

UNPUBLISHED
February 18, 2020

No. 345669
Kent Circuit Court
LC No. 18-00734-CZ

Before: SAWYER, P.J., and MARKEY and STEPHENS, JJ.

PER CURIAM.

Defendant Willie Maxwell, a hip-hop artist known as Fetty Wap, appeals by delayed leave granted the order of the trial court denying his motion to set aside a default judgment that had been entered against Maxwell. We reverse and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

On June 21, 2017, plaintiff Thomas Walker entered into a performance agreement with Agency Twelve, Inc., which was furnishing Maxwell's services. Under the terms of the agreement, Maxwell was to perform at a concert at Van Andel Arena on Friday, September 12, 2017. The performance agreement required Walker to make an immediate deposit of $65,000, which he paid. Thereafter, Walker was to pay Maxwell $50,000 no later than the evening of the concert. The agreement indicated that other musical artists would also perform at the concert. Julia Beverly was one of Maxwell's "booking agents," and she executed the agreement on behalf of Agency Twelve.

The concert was eventually canceled. According to Walker, after the performance agreement was signed, neither he nor Van Andel Arena was able to get hold of Maxwell to discuss his transportation to Grand Rapids and the details regarding sound, lighting, and production matters for the concert. Because Maxwell allegedly gave no indication that he intended to perform at the concert, the Van Andel Arena canceled the concert in order to mitigate its losses.

-1-

After the concert was canceled, Walker sought to recover the $65,000 deposit. He contacted Beverly and learned that Agency Twelve had disposed of the deposit months earlier. Beverly provided Walker with the name of an attorney for Maxwell, Navarro Gray. On November 17, 2017, Walker's counsel e-mailed Gray, informing Gray that Walker sought the return of the deposit. According to Walker, Gray did not respond to the e-mail.

On January 25, 2018, Walker filed this lawsuit against Maxwell. The complaint alleged claims sounding in breach of contract, common-law conversion, statutory conversion, and unjust enrichment. The statutory conversion claim sought treble damages in the amount of $195,000. Walker asserted that because of Maxwell's "celebrity and fame" it was almost impossible to locate information regarding his residence and whereabouts. Walker discovered one address in Elizabeth, New Jersey, that he believed was a residence for Maxwell. Walker attempted to serve Maxwell at this address, but his attempt was unsuccessful. Walker then decided to try serving Maxwell at one of his concerts. After learning that Maxwell was scheduled to perform at the Sherman Theatre in Stroudsburg, Pennsylvania, on February 24, 2018, Walker hired Barry Karasiewicz, a Pennsylvania law enforcement officer, to serve Maxwell at the concert.

Officer Karasiewicz averred that he went to the Sherman Theatre with fellow officer James Cuscani on February 24, 2018.[1] They entered the theatre through an unlocked side door. The two officers then made contact with Richard Berkowitz, the manager of the theatre, and James Well, the theatre's head of security. Officer Karasiewicz informed the two men that he and Cuscani were there to serve process on Maxwell. Karasiewicz asked to be taken to Maxwell or his agent. Wells eventually brought the two officers to the theatre's basement, where they were introduced to Robert Mehalick, who presented himself as being an agent or representative of Maxwell's. Karasiewicz specifically asked Mehalick if he was Maxwell's agent or manager, and Mehalick replied that he was Maxwell's tour manager. Officer Karasiewicz explained to Mehalick that he sought to serve process on Maxwell. Because Maxwell was not able or willing to accept personal service, Mehalick asked if he could call "the lawyer" to discuss Mehalick's authority to accept service on Maxwell's behalf. Karasiewicz approved and Mehalick walked away. After his phone call ended, Mehalick returned and said that he was legally authorized to accept service of process on Maxwell's behalf. Mehalick accepted service, signed his name on the form acknowledging service, and allowed Karasiewicz to take a picture of his driver's license.

On March 27, 2018, at Walker's request, the clerk of the Kent Circuit Court entered a default against Maxwell for failing to appear and answer the complaint. On March 28, 2018, the trial court entered a default judgment in the amount of $195,000 in favor of Walker. The order provided an Elizabeth, New Jersey address for Maxwell. According to Walker, he mailed a copy of the default judgment to Maxwell's purported last known address—a residence in Elizabeth, New Jersey. Walker's attorney also e-mailed a copy of the default judgment to Gray. Gray responded that he represented Maxwell in entertainment matters in New Jersey. Gray also informed Walker's counsel that Maxwell definitely had a defense and that there were various e-mails indicating that Walker and Van Andel Arena had canceled the show, not Maxwell. Gray further stated that he would be hiring an attorney in Michigan to vacate the default judgment.

---

[1] All of the information in this paragraph is based on Karasiewicz's affidavit.

Walker requested and obtained writs of garnishment from the trial court with respect to Maxwell's sources of income, seeking to collect the judgment.

On June 18, 2018, Maxwell entered an appearance in the case. On June 28, 2018, Maxwell moved to set aside the default judgment. In an affidavit signed shortly before the motion to set aside the default judgment was filed, Maxwell averred that he was not even familiar with the performance agreement. Maxwell noted, correctly, that he had not signed the agreement, and he claimed that he did not receive the $65,000 deposit. According to Maxwell, he had been asked to perform at Van Andel Arena on September 29, 2017, and he was prepared to perform. He averred that it was his understanding that the concert was canceled by the promoter. Maxwell maintained that he did not cancel the concert. Maxwell further averred that he was never served with process, asserting that Mehalick did not provide him with the summons and complaint, nor did Mehalick ever mention to him that he had been sued in connection with the canceled concert in Grand Rapids. Maxwell contended that Mehalick was not his agent and that Mehalick did not have authority to accept service on his behalf. Maxwell claimed that Mehalick was merely a tour manager. Maxwell additionally averred that he was not served with the default judgment and that he was not familiar with the Elizabeth, New Jersey address listed in the default judgment. Maxwell did not own that property, and he had never lived at that address. Maxwell asserted that he did not become aware of the lawsuit until he received a notice of garnishment.

In his affidavit, Mehalick averred that, earlier in the year, he had been serving as a manager for a tour that featured Maxwell and other artists. He contended that he was not Maxwell's agent and that he did not have the authority to accept service on Maxwell's behalf. Mehalick acknowledged receiving a summons and complaint in February 2018 in Stroudsburg, Pennsylvania, but he claimed that he did not read or review the papers. According to Mehalick, the person who provided him the papers did not explain or indicate that they were for a lawsuit against Maxwell. Mehalick maintained that he did not give the documents to Maxwell. Mehalick could not recall what he did with the papers. He averred that it was possible that he set the documents down somewhere and did not pick them up before leaving the theatre after the concert.

The trial court held a hearing on Maxwell's motion to set aside the default judgment on July 20, 2018.[2] At the hearing, the trial court rendered an opinion from the bench. The court indicated that there was no dispute that the summons and complaint were served on Mehalick, who was a tour manager for Maxwell. The trial court then stated that, under MCR 2.105(H), the question became whether Mehalick was an agent authorized by written appointment or by law to accept service on behalf of Maxwell. The court proceeded to discuss in detail what it characterized as the "uncontested facts" contained in Officer Karasiewicz's affidavit, which the court found "compelling." The trial court then ruled as follows:

---

[2] We shall discuss the parties' arguments regarding the motion in the analysis section of this opinion, but only to the extent that the arguments have been renewed on appeal.

-3-

The conclusion to be drawn [from the affidavit] is that the process server, . . . Karasiewicz, had reason to believe that Mehalick had actual or apparent authority to accept the summons and complaint on behalf of Defendant Maxwell.

Therefore, I see no good cause to set aside the default judgment under Michigan Court Rule 2.603, and the motion to set aside the default and default judgment is respectfully denied.

An order denying Maxwell's motion to set aside the default judgment was entered on July 26, 2018. Maxwell appeals by delayed leave granted. *Walker v Maxwell*, unpublished order of the Court of Appeals, entered February 20, 2019 (Docket No. 345669).

## II. ANALYSIS

On appeal, Maxwell argues that the trial court erred by refusing to set aside the default judgment because: (1) Maxwell was never served with the complaint; (2) Maxwell had good cause for not responding to the complaint and had multiple meritorious defenses; (3) Maxwell did not have actual knowledge of the complaint; and (4) extraordinary circumstances existed and Maxwell suffered a substantial injustice with the court's decision.

### A. STANDARDS OF REVIEW

This Court reviews a ruling on a motion to set aside a default or a default judgment for an abuse of discretion. *Shawl v Spence Bros, Inc*, 280 Mich App 213, 218; 760 NW2d 674 (2008). We also review for an abuse of discretion a trial court's decision on a motion for relief from judgment. *Peterson v Auto Owners Ins Co*, 274 Mich App 407, 412; 733 NW2d 413 (2007). A trial court abuses its discretion when its ruling falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). This Court reviews de novo the interpretation and application of the court rules. *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019); *Colista v Thomas*, 241 Mich App 529, 535; 616 NW2d 249 (2000).

### B. THE INTERPRETATION OF COURT RULES

"When called upon to interpret and apply a court rule, this Court applies the principles that govern statutory interpretation." *Haliw v Sterling Hts*, 471 Mich 700, 704-705; 691 NW2d 753 (2005); see also *Fleet Business Credit, LLC v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 591; 735 NW2d 644 (2007). "Court rules should be interpreted to effect the intent of the drafter, the Michigan Supreme Court." *Fleet Business Credit*, 274 Mich App at 591. Clear and unambiguous language contained in a court rule must be given its plain meaning and is enforced as written. *Id*.

### C. THE LAW OF AGENCY

An agency constitutes a fiduciary relationship that is created by express or implied contract or by law wherein an agent may act on behalf of a principal and bind the principal by words or actions. *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 326 Mich App 684, 699; 930

NW2d 416 (2019). Generally speaking, "[i]n agency law, the principal and his agent share a legal identity[.]" *People v Konrad*, 449 Mich 263, 280; 536 NW2d 517 (1995). An agency relationship arises when there is a manifestation by the principal that the agent may act on the principal's account. *Meretta v Peach*, 195 Mich App 695, 697; 491 NW2d 278 (1992).

The authority of an agent to bind the principal may either be actual or apparent, and actual authority may be express or implied. *Id*. at 698. Actual "implied" authority of an agent can be deduced from the surrounding circumstances, and these circumstances must show that the principal actually intended for the agent to possess the authority to enter into a transaction on the principal's behalf. *Law Offices of Jeffrey Sherbow*, 326 Mich App at 700. Implied authority is the authority that an agent believes he or she possesses. *Meretta*, 195 Mich App at 698. Apparent authority arises when acts and appearances lead third parties to reasonably believe that an agency relationship exists. *Id*. at 698-699. Apparent authority must be traceable to the principal, and it cannot be established by the conduct and acts of the alleged agent. *Id*. at 699. "In determining whether an agent possesses apparent authority to perform a particular act, the court must look to all surrounding facts and circumstances." *Id*.[3]

## D. THE PERTINENT COURT RULES AND ANALYTICAL FRAMEWORK

After the entry of a default judgment, the defaulted party may move to set aside the judgment under MCR 2.603(D) and/or MCR 2.612. See MCR 2.603(D)(3) ("In addition, the court may set aside a default and a default judgment in accordance with MCR 2.612."). MCR 2.603(D) provides, in pertinent part, as follows:

(1) A motion to set aside a default or a default judgment, except when grounded on lack of jurisdiction over the defendant, shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed.

(2) Except as provided in MCR 2.612, if personal service was made on the party against whom the default was taken, the default, and default judgment if one has been entered, may be set aside only if the motion is filed

(a) before entry of a default judgment, or

---

[3] See also 1 Restatement Agency, 3d, § 2.03, p 113, which provides, "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Manifestations can take many forms, including explicit statements that the principal makes directly to a third party and statements made by others concerning an actor's authority that reach the third party and are traceable to the principal. Restatement, § 2.03, comment *c*, pp 114-115.

(b) if a default judgment has been entered, within 21 days after the default judgment was entered.

With respect to MCR 2.603(D)(2), the parties apparently agree that it does not apply in this case because "personal service" was not made directly on Maxwell. We are not entirely sure that "personal service . . . on [a] party" does not encompass personal service on a party's agent, but we decline to address the matter further because Walker makes no such argument.[4] Moreover, for the reasons set forth below, we conclude that service was not successfully made on Maxwell under the law of agency. Accordingly, we must shift our attention to MCR 2.603(D)(1) to address whether the trial court lacked jurisdiction over Maxwell and, if the court had jurisdiction over him, whether Maxwell established good cause and a meritorious defense. The issue of jurisdiction over a defendant is, in part, tied to service of process, as our Supreme Court explained in *Lawrence M Clarke, Inc v Richco Constr, Inc*, 489 Mich 265, 274; 803 NW2d 151 (2011):

> A court cannot adjudicate an in personam controversy without first having obtained jurisdiction over the defendant by service of process. A court must obtain personal jurisdiction over a defendant in order to satisfy the due process requirement that a defendant be informed of an action by the best means available under the circumstances. The fundamental requisite of due process of law is the opportunity to be heard. This right to be heard has little reality or worth unless one is informed that the matter is pending. [Quotation marks, citations, alterations, and ellipses omitted.]

With respect to the issue of "good cause" under MCR 2.603(D)(1), this Court in *Village of Edmore v Crystal Automation Sys, Inc*, 322 Mich App 244, 255-256; 911 NW2d 241 (2017), observed:

> In determining whether a party has shown good cause, the trial court should consider the following factors: (1) whether the party completely failed to respond or simply missed the deadline to file; (2) if the party simply missed the deadline to file, how long after the deadline the filing occurred; (3) the duration between entry of the default judgment and the filing of the motion to set aside the judgment; (4) whether there was defective process or notice; (5) the circumstances behind the failure to file or file timely; (6) whether the failure was knowing or intentional; (7) the size of the judgment and the amount of costs due under MCR 2.603(D)(4); (8) whether the default judgment results in an ongoing liability (as with paternity or child support); and (9) if an insurer is involved, whether internal policies of the

---

[4] If "personal service" had been made on Maxwell, he would not be entitled to relief under MCR 2.603(D), even if he had a meritorious defense and good cause for not filing an answer, because the motion to set aside the default judgment was not filed in timely fashion. The default judgment was entered on March 28, 2018, and the motion to set aside the default judgment was not filed until three months later on June 28, 2018, which was well beyond the 21-day limit in MCR 2.603(D)(2).

company were followed. [Paragraph restructured; quotation marks, citation, and ellipsis omitted.]

This list is not intended to be exhaustive or exclusive, only relevant factors should be considered, and it is within the trial court's discretion to determine how much weight any particular factor should be given. *Id.* at 256.

With respect to determining whether a defendant has presented an affidavit showing a meritorious defense, a trial court should consider whether the affidavit contains evidence indicating that an element of the cause of action may not be provable, that a ground for summary disposition exists under MCR 2.116(C), or that the plaintiff's claim relies upon inadmissible evidence. *Shawl*, 280 Mich App at 238. When a party raises a meritorious defense that would be absolute if proven, a lesser showing of good cause will be required than if the defense was weaker. *Id.* at 233. But the "good cause" and "meritorious defense" elements of MCR 2.603(D)(1) are separate requirements that should not to be blurred. *Id.*

The alternative mechanism to obtain relief from a default judgment is under MCR 2.612, which provides, in pertinent part, as follows:

> (B) A defendant over whom personal jurisdiction was necessary and acquired, but who did not in fact have knowledge of the pendency of the action, may enter an appearance within 1 year after final judgment, and if the defendant shows reason justifying relief from the judgment and innocent third persons will not be prejudiced, the court may relieve the defendant from the judgment, order, or proceedings for which personal jurisdiction was necessary, on payment of costs or on conditions the court deems just.

A defendant may obtain relief from a default judgment under MCR 2.612(B) "if (1) personal jurisdiction over defendants was necessary and acquired, (2) defendants in fact had no knowledge of the action pending against them, (3) defendants entered an appearance within one year after the final judgment, (4) defendants show a reason justifying relief from the judgment, and (5) granting defendants relief from the judgment will not prejudice innocent third persons." *Lawrence M Clarke*, 489 Mich at 273. Accordingly, even if service was properly made on Maxwell through an agent and the trial court acquired personal jurisdiction over Maxwell, MCR 2.612(B) could provide a possible avenue for relief from the default judgment. Unfortunately, the trial court did not bother to address potential relief from the default judgment under MCR 2.612.

Finally, MCR 2.612(C)(1)(a) allows a trial court to set aside a judgment on just terms based on "[m]istake, inadvertence, surprise, or excusable neglect," and the court may also do so under MCR 2.612(C)(1)(f) on the basis of "[a]ny other reason justifying relief from the operation of the judgment." A motion for relief from judgment brought on the latter basis must be filed within a "reasonable time," and if pursued on the former basis, the motion must be filed "within one year after the judgment." MCR 2.612(C)(2). Maxwell relies on these provisions as a last resort.

E.  DISCUSSION

1.  MCR 2.603(D) – JURISDICTION AND SERVICE OF PROCESS

The burden of proof to show nonservice rests on the party attacking the jurisdiction of the trial court.  *James v James*, 57 Mich App 452, 454; 225 NW2d 804 (1975).  MCR 2.105(A) and (B) provide numerous options for serving process on resident and nonresident individuals.  But none of those avenues is applicable in this case.  Relevant here is MCR 2.105(H)(1), which provides that "[s]ervice of process on a defendant may be made by serving a summons and a copy of the complaint *on an agent authorized by written appointment or by law to receive service of process*."  (Emphasis added.)  The evidence conclusively established that the summons and complaint were personally served by Officer Karasiewicz on Mehalick in the theatre in Pennsylvania.  Therefore, the issue becomes whether Mehalick was an agent authorized by written appointment or by law to receive service of process on behalf of Maxwell.  Although Walker engages in some speculation on the matter, there ultimately was no evidence that Mehalick was authorized by written appointment to act as Maxwell's agent relative to service of process.  As explained below, we also conclude that Mehalick was not authorized by law to act as Maxwell's agent with regard to service.

The trial court's ruling was confusing and lacked clarity.  The court determined that Officer Karasiewicz "had reason to believe that Mehalick had actual or apparent authority to accept the summons and complaint," and therefore the court saw "no good cause to set aside the default judgment . . . ."  First, we are unaware of any legal authority suggesting that "actual authority" can be based solely on what the serving officer believed.  Second, even if there was authority by Mehalick to accept service on behalf of Maxwell, it did not necessarily follow that there was an absence of good cause to set aside the default judgment.  Moreover, we hold that Maxwell has established that there is no support for a conclusion that Mehalick had actual authority, express or implied, or apparent authority to accept service of the summons and complaint for Maxwell.  There is no evidence that Maxwell expressly authorized Mehalick to accept service.  Indeed, Maxwell averred that Mehalick did not have such authority; Maxwell stated, "[H]e is not my agent."  And Mehalick averred that he did not obtain authority from Maxwell to accept service on behalf of the hip-hop artist.  Additionally, in regard to actual authority by implication, there was no evidence that Maxwell actually intended for Mehalick to have authority to accept service, *Law Offices of Jeffrey Sherbow,* 326 Mich App at 700, nor was there any evidence of manifestations by Maxwell from which one could conceivably imply that Mehalick had the authority to act on Maxwell's behalf as to service of process, *Meretta*, 195 Mich App 697.  Finally, with respect to apparent authority, there was no evidence that Officer Karasiewicz came to believe that Mehalick had authority to accept process *traceable to actions or statements by Maxwell*.  *Id.* at 699.[5]  A phone call by Mehalick to "the lawyer" and the claim that the attorney informed Mehalick that he had

---

[5] We also note that in *McLean v Dearborn*, 302 Mich App 68, 80-81; 836 NW2d 916 (2013), this Court appeared to reject the notion that apparent authority can suffice for purposes of the authorized-by-law language in MCR 2.105(H), although it is not entirely clear.

authority to accept service for Maxwell did not suffice to establish actual or apparent authority—nothing was linked to conduct, actions, or statements by Maxwell himself. And because Mehalick was not authorized by law to accept service of process, the trial court never obtained jurisdiction over Maxwell, entitling Maxwell to an order setting aside the default judgment.

Although, in light of our holding, it is unnecessary to address "good cause" or whether Maxwell has a "meritorious defense," we shall make a few remarks. With respect to meritorious defenses, Maxwell was not a signatory to the performance agreement, he averred that he was not even familiar with the agreement, it is not clear that Maxwell was actually responsible for the cancellation of the concert,[6] the performance agreement did not indicate that the $65,000 deposit was to be paid to Maxwell, and Maxwell averred that he never received the $65,000 deposit that he was accused of having converted and appropriated to his own use.[7] To be clear, we are not positing that Maxwell has an absolute defense or that Walker has no case, but there are some issues that cry out for resolution on the merits. On the issue of good cause, there is no indication that the failure to respond and file an answer was done knowingly or intentionally by Maxwell.

## 2. MCR 2.612(B) – JURISDICTION EXISTS BUT NO KNOWLEDGE OF ACTION

MCR 2.612(B) provides further support for our ruling, even assuming that the trial court had jurisdiction over Maxwell. A defendant may seek and obtain relief from a default judgment under MCR 2.612(B) if the defendant "did not have *actual* knowledge of the pending action." *Lawrence M Clarke*, 489 Mich at 276 (emphasis added). The relief is available despite the fact that a court has acquired jurisdiction over the defendant. MCR 2.612(B). Maxwell averred that he did not learn about the pending action until he received a notice of garnishment. Walker presented no evidence to indicate that Maxwell knew about the case before entry of the default judgment. Although Walker asserts that Mehalick and Gray knew about the suit, even if that knowledge could be imputed to Maxwell, imputed knowledge does not constitute actual knowledge. *Lawrence M Clarke*, 489 Mich at 276 (dictionary definition distinguishes actual knowledge from implied or constructive knowledge of a pending action). Additionally, Maxwell filed an appearance within one year of entry of the default judgment and no innocent third persons would be prejudiced by setting aside the default judgment. MCR 2.612(B). Further, given the disputable aspects of suing Maxwell under the performance agreement, relief was justified under MCR 2.612(B). We note that while the policy of this state is generally against setting aside default judgments when properly entered, the law favors the determination of claims on the merits. *Shawl*, 280 Mich App at 221.

## 3. MCR 2.612(C) – GROUNDS FOR RELIEF FROM JUDGMENT

---

[6] There was evidence that two other anticipated performers would not be performing and that ticket sales were dismal, all calling into question whether the concert was viable.

[7] It is not clear to this panel why Agency Twelve was not named as a defendant.

It is unnecessary and we decline to address whether Maxwell was entitled to relief from the default judgment on the basis of mistake, inadvertence, surprise, excusable neglect, or any other reason justifying relief. See MCR 2.612(C)(1)(a) and (f).

We reverse and remand for further proceedings. We do not retain jurisdiction. Having fully prevailed on appeal, Maxwell may tax costs under MCR 7.219.


/s/ David H. Sawyer
/s/ Jane E. Markey
/s/ Cynthia Diane Stephens